STATE of Missouri, Respondent,

v.

Stellman STRAWTHER, Jr., Appellant.

No. 55930.

Supreme Court of Missouri,
Division No. 2.

Feb. 22, 1972.

John C. Danforth, Atty. Gen., Richard S. Paden, Asst. Atty. Gen., Jefferson City, for respondent.

Wm. C. Morgan, Waynesville, for appellant.

HOUSER, Commissioner.

Stellman Strawther, Jr., tried by a jury, convicted of robbery in the first degree and sentenced to 8 years' imprisonment, has appealed.

Appellant's first point: "The court erred in overruling defendant's objection to the entire jury panel on the ground that while the defendant is a Negro, there were no Negroes on the jury panel as a result of a practice of systematic exclusion of Negroes from jury panels in Pulaski County, Missouri, for the reason that the exclusion of Negroes from the petit jury which tried this defendant violated this defendant's rights under the Fourteenth Amendment to the Constitution of the United States." Citing Whitus v. Georgia, 385 U. S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599, appellant claims that he made a prima facie case showing systematic exclusion of Negroes from the jury panel in Pulaski County and that the burden of going forward shifted to the State, which offered only the unsupported opinion of two witnesses that no such systematic exclusion had been practiced. Appellant contends that the State's evidence on this issue did not overcome his prima facie case, under Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074.

The circuit clerk, who had been in office for sixteen years, and the county clerk, who had been in the office for eight years and prior to that was Presiding Judge of the County Court of Pulaski County for four years, testified for appellant. For sixteen years the circuit clerk had been a member of the board of jury commissioners. The county clerk had been a member of that board during his incumbency as county judge. From their testimony these facts appeared: There were approximately 8,000 registered voters in the county, approximately 80 to 100 of which were Negroes who were over 21 years of age and reputable citizens. No Negroes had served on a petit jury panel in the county during the time the circuit clerk had been in office. The ex-county judge could not answer whether any Negroes had been selected as members of the petit jury panel during his incumbency, stating "We have selected a lot of people that I didn't know that the other boys did know that's on the jury panel. I couldn't answer that, whether they was any colored on it or not." The source from which jurors' names were drawn by the jury commissioners for service as petit or alternate petit jurors was the list of voters appearing in the poll books. In going over the voters' list there is no way to determine whether a voter is colored or Caucasian; they are not designated by race. The procedure was as follows: The names of the voters at the last election in each of the six townships were typed on pieces of paper, separated individually and placed in the box by townships. The names of 24 regular members of the petit jury panel and 24 alternates were then drawn from the box. There is no indication of the color of the persons whose names appear on these pieces of paper. The County Voter Registration Lists, which are in the custody of the county clerk, include a question about the race of the registrant but the registration books were not used by the circuit clerk in preparing the slips of paper that went into the box. When the name was drawn out of the box and called out to the board of jury commissioners (consisting of the circuit judge, the three county judges and the circuit clerk) a decision was made whether the person was available and qualified. Twice when deputy sheriffs' names were drawn they were excluded on the ground that they were officers of the law (one of the deputies was a Negro). Some names drawn (not identified as to race) were not taken because they had been "shipped out,"[1] or could not be served by the Sheriff because their addresses were unknown,

---

1. I. e., "shipped out" from Pulaski County, the seat of Fort Leonard Wood, a large army camp.

or were not eligible to serve (for instance, the deputy sheriffs), or considering "their background and moral fitness" the board of jury commissioners determined that they should not serve. In the latter class were persons against whom criminal charges were pending. Occasionally the names of Negroes were drawn from the box in the past— "a few" Negroes were drawn—but to the knowledge of the circuit clerk no member of the Negro race had been called on either the regular or alternate petit jury panel or served as a member of any petit jury as a "pick-up" juror. As an example of Negroes whose names were drawn but laid aside were "some of them [who had] charges of selling liquor without a license pending against them." Both officers testified that they knew of no systematic or intentional exclusion of Negroes. The county clerk testified that they had to disqualify some whites as well as some colored persons on the basis that they had criminal cases pending against them.

 The foregoing did not make a prima facie case of systematic exclusion of Negroes, on the basis of race, from the jury panel that tried appellant. Appellant did not attempt to show irregularities in the selection of this particular jury panel. The evidence related to what had happened in the past at various terms of court over a sixteen-year period—the *general practice* in Pulaski County in drawing jury panels was demonstrated. While past practices may be shown past practices will not make a prima facie case, unsupported by evidence that systematic exclusion was practiced in the composition of the particular panel from which the convicting jury was chosen.

Nor was there a showing of statistical probabilities warranting such a finding. There was evidence that from 1% to 1¼% of the registered voters of Pulaski County were Negroes, but no showing as to the number or percentage of registered Negroes who actually voted (it being from the list of actual voters that the names which went into the box were taken), and no evidence as to the number or percentage of Negroes on the voting list who were qualified to serve as jurors. In Whitus v. Georgia the population of the county was shown to be 45% Negro, and the County Tax Digest, from which names of prospective jurors were taken, was kept on a segregated basis. In this case the percentage of the population of Pulaski County that were Negro was not shown and the poll books, from which the jury panel was made up, were not kept on a segregated basis. If we should make the assumption that all of the registered Negroes voted and that each of them was qualified, eligible and available for service of process, the statistical probability would still be considerably in favor of the selection of an all-white jury panel.

Aside from statistics, and not considering their conclusory testimony that there was no systematic or intentional exclusion of Negroes, appellant's witnesses revealed a proper source for the names placed in the box; that Negroes' names went into the box and were occasionally drawn; that the Negroes whose names were drawn were rejected for acceptable reasons, and that in rejecting persons on these grounds the jury commissioners did not discriminate between white persons and Negroes, but rejected all such disqualified persons indiscriminately when found not qualified on these bases. Appellant's first point is without merit.

Appellant's second point: "The court erred in overruling defendant's objection to the endorsement of Clayton E. Larkin on the information as a witness for the State and in overruling defendant's objection to allowing this witness to testify, or in not granting the defendant's request for a continuance because of such endorsement for the reason that defendant was completely surprised by the appearance of this witness, was unprepared to defend against his testimony and was thereby denied a fair trial."

Criminal Rule 24.17, V.A.M.R. provides that "When an indictment or information is filed the names of all material witnesses for the prosecution shall be endorsed thereon. The names of other witnesses may be added at any time upon order of court and after notice to the defendant or his attorney of record. Other witnesses may be subpoenaed and used by the state, but no continuance shall be granted to the state on account of the absence of any witness whose name is not thus endorsed on the indictment or information, unless upon the affidavit of the prosecuting attorney showing good cause for such continuance. * * *."

On the morning of trial, before any other proceedings were had, the State asked leave to endorse on the information the names of Clayton E. Larkin, the victim of the alleged robbery, and Wayne Miller, owner of the liquor store where the robbery was alleged to have taken place. Defendant had no objection to the endorsement of the name of Wayne Miller because two weeks prior thereto the prosecuting attorney had notified defense counsel that leave to endorse Mr. Miller's name would be requested, but defendant's counsel strongly objected to the endorsement of Mr. Larkin's name because no notice of an intention to use him as a witness had been brought to defendant or his counsel, who stated that he had never seen Mr. Larkin or talked to him or had an opportunity to question him, or if need be obtain rebuttal testimony. The prosecuting attorney thought he had endorsed Mr. Larkin's name on the original information, as it appeared on his copy. Mr. Larkin was in the courtroom, and the prosecuting attorney was willing to allow defense counsel to interrogate him before trial. The court overruled defendant's objection and allowed the State to make the endorsement, since Mr. Larkin's name appeared in the body of the information, where he was named as the person in custody of the money and from whose person the money was taken. The court granted defense counsel whatever time reasonably needed to talk to Mr. Larkin. Defense counsel asked for and was given time to prepare a written affidavit of surprise and an affidavit for a continuance, which were prepared, filed and overruled. Defense counsel talked to Mr. Larkin briefly before preparing these papers. The reason given for the requested continuance: to locate witnesses who would rebut the testimony Mr. Larkin was likely to give at the trial and find witnesses who would place defendant at another place at the time of the alleged robbery. Defense counsel also objected to the offering of Mr. Larkin as a witness for the State, and preserved the point in defendant's motion for a new trial.

■ On the whole record we find no merit in this point. Delay in endorsing the names of additional witnesses is sought to be discouraged by Criminal Rule 24.17, but this Court "recognizes that late endorsements must sometimes be permitted if they can be made without prejudice to the defendant's rights." State v. Cobb, Mo.Sup. en Banc, 444 S.W.2d 408, 415 [13]. Both Criminal Rule 24.17 and the complementary statutes, §§ 545.070 and 545.240, RSMo 1969, V.A.M.S., provide that other witnesses may be subpoenaed and sworn by the State. In the final analysis, it is a matter of judicial discretion. The trial court "has a broad discretion in permitting the endorsement of the names of additional witnesses on the information or indictment," State v. Cobb, supra; State v. Thost, Mo. Sup., 328 S.W.2d 36, and a judgment of conviction will not be reversed because the name of a witness was endorsed on the information during trial unless it is shown that defendant was thereby prejudiced. State v. Parks, Mo.Sup., 331 S.W.2d 547.

In the exercise of the court's discretion many factors may be taken into consideration, including whether defendant waived the objection; whether the State intended surprise or acted deceptively or in bad faith, with intention to disadvantage defendant, State v. Glon, Mo.Sup., 253 S.W.

364; State v. Lassieur, Mo.Sup., 242 S.W. 900; whether in fact defendant was surprised and suffered any disadvantage, State v. Webb, Mo.Sup., 432 S.W.2d 218, and whether the type of testimony given might readily have been comtemplated. State v. Gooch, Mo.Sup., 420 S.W.2d 283.

Certainly there was no waiver; defendant took every procedural precaution to raise, insist upon and preserve the point.

On the other hand, we find no intent on the part of the prosecuting attorney to surprise or take advantage of the defendant; no act of bad faith or deception. He thought Mr. Larkin's name had been endorsed on the information. While defendant was surprised in the sense that he thought the prosecuting attorney was not going to endorse the names of any other witnesses after receiving notification with respect to endorsement of Mr. Miller's name, it is difficult to conclude that defendant and his counsel were surprised in the legally accepted sense of the term. Since the only persons present at the time of the crime were two robbers and Mr. Larkin it might readily have been contemplated by defendant and his counsel that at the trial the State would produce the only available eyewitness to the crime. It would only be reasonable to anticipate that Mr. Larkin would be counted upon as the State's chief witness. There could have been no surprise as to the identity of the person alleged to have been robbed, for Mr. Larkin's name appeared twice in the body of the information. The fact that defendant's counsel had not interviewed Mr. Larkin prior to the morning of trial, and then only briefly, apparently did not harm defendant or hamper his counsel in the conduct of the cross-examination of Mr. Larkin. Defense counsel cross-examined him thoroughly and effectively, eliciting and emphasizing the fact that the latter could not identify defendant as one of the robbers. On this review we are not led to the conclusion that defendant suffered any disadvantage or prejudice as a result of the court allowing Mr. Larkin to testify or failing to grant a continuance. Defendant took the stand, testified to an alibi, repudiated his confession, and introduced the evidence of a friend in support of the defense of alibi. There is nothing to indicate that, granted additional time, defendant or his counsel could have found any other or further alibi or other defense witnesses to dispute or counteract Mr. Larkin's testimony. "If defendant was not prejudiced, we may not convict the trial court of an abuse of discretion." State v. Moore, Mo.Sup., 428 S.W.2d 563, 564 [1].

Appellant's third point: "The court erred in submitting Instruction No. S–2–G which is as follows:

'The Court instructs the jury that it is not necessary for the evidence to show that the defendant himself actually took from Clayton E. Larkin any part of the money mentioned in the evidence, but you will be authorized in finding the defendant guilty of robbery in the first degree if you find and believe from the evidence, beyond a reasonable doubt, that the defendant was present at the time and place for the purpose, if necessary, of aiding, assisting or encouraging another in wrongfully taking the money from Clayton E. Larkin feloniously and against his will.'

for the reason that the said instruction fails to require the jury to find that the defendant *intentionally* aided and abetted another person in the commission of the crime."

The evidence indicated that one Robert Gross entered the liquor store alone, held a gun on Mr. Larkin and bagged the money; that while Mr. Larkin was at the cash register another man (Strawther, according to the State's case) entered the store with a gun and after Mr. Larkin had been ordered to go to the back room and face the wall the "other man" directed Mr. Larkin

into the bathroom and ordered him not to move, whereupon Mr. Larkin was struck over the head with a bottle of rum and rendered partially unconscious, after which the two men departed.

 Defendant contends that under State v. Grebe, Mo.Sup. en Banc, 461 S. W.2d 265, where defendant is tried as an aider and abetter it is reversible error to instruct the jury on this subject without requiring a jury finding that defendant *intentionally* aided and abetted in the commission of the crime. Grebe so holds and we reaffirm our ruling that under these circumstances intent is an essential element of the State's case. That case, however, does not hold that the use of the precise words "intent" or "intentionally" is an indispensable requisite. Other words having the same meaning and import may be substituted. The words "for the purpose, * * * of aiding, assisting or encouraging another * * *," as used in Instruction No. S–2–G, convey exactly the same meaning as the words "did intentionally aid, abet," etc. and are sufficient. As pointed out by the Attorney General, this Court in Grebe cited approvingly and quoted from Woolweaver v. State, 50 Ohio St. 277, 34 N.E. 352, 353, wherein the Supreme Court of Ohio approved the words "purposely incite or encourage" as satisfying the requirement of a finding of criminal intent. State v. Grebe, supra, 461 S.W.2d l. c. 268.

No error appearing, the judgment is affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

All of the Judges concur.