**STATE of Missouri, Plaintiff-Respondent,**

v.

**Eddie James VAN, Defendant-Appellant.**

**No. 37704.**

Missouri Court of Appeals, St. Louis District, Division Four.

Nov. 16, 1976.

Robert C. Babione, Public Defender, J. C. Jones, Asst. Public Defender, Christelle Adelman-Adler, Mary Louise Moran, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

A jury convicted Eddie James Van of Stealing Over Fifty Dollars, § 560.156, RSMo 1969, and he appeals. We affirm.

Shortly after noon on July 8, 1975 Richard Coyle, Assistant Manager of the F. W. Woolworth store at 3601 Olive Street in the City of St. Louis, while descending on the escalator in the store, noticed a man in the back of the music department with a green satchel. The man was stacking phonograph records on top of the counter and placing them in the satchel. Coyle watched the man. As their eyes met the man (identified by Coyle as this appellant) walked away from the record cash register, where a clerk was on duty, and left the record department. Coyle notified security guard Sam Denson that there was a man in the back with a green satchel with records in it. At Denson's request Coyle pointed out appellant. By then appellant was at the lunch counter. To get to the lunch counter appellant had passed the cash register at the record counter; passed the stationery counter, where a clerk was on duty at another cash register, and passed the cash register at the card counter. Denson approached appellant at the lunch counter, asked if he could look inside the green satchel. Inside the satchel was a number of long playing record albums. The satchel was taken to a back room in the store where it was emptied. The contents were inventoried by Coyle, who called the police. Police arrested appellant, seized the satchel, containing 21 long playing record albums, seized the albums and searched appellant. On appellant's person police found 30–35¢ in change, a necklace, a ring and a key holder. At the trial Coyle and Denson identified appellant as the man they observed in the store on the occasion in question.

During voir dire Daniel J. Murphy, Assistant Circuit Attorney, told the panel that defendant is presumed innocent; that the state must prove him guilty beyond a reasonable doubt; that in a criminal case there is a higher level of proof required to convict than in a civil case, and stated "I am not required to prove this man guilty beyond all doubt." An objection to that as a definition of reasonable doubt was overruled, whereupon he continued: "I am not required to prove him guilty beyond any and all doubt, only beyond a reasonable doubt. * * * And what a reasonable doubt is will all be explained to you when you get your instructions. The State is not assuming a burden beyond any and all doubt, just beyond a reasonable doubt."

It was improper for Mr. Murphy to tell the panel on voir dire examination what burden of proof rests upon the state, and to differentiate between beyond a reasonable doubt and beyond any and all doubt. For more than fifty years it has been the law of this State that "It is not proper for counsel to state any law applicable to the case not embodied in the written instruction to the jury." *State v. Davis,* 284 Mo. 695, 225 S.W. 707, 710 (1920). It is elementary that instructing the jury on the burden of proof is a function of the trial judge, who in his discretion may read MAI–CR 2.02, as a part of MAI–CR 1.02, and that no other instruction by the court (and certainly not by counsel) may be given further elaborating upon or attempting to define reasonable doubt. Notes on Use, following MAI–CR 2.20. Mr. Murphy was not asking a question. He was informing the jury as to the law, which was not his prerogative. *State v. Smith,* 422 S.W.2d 50, 68[31] (Mo. banc 1967).

As a general rule error is presumed to be prejudicial, and it is our duty to determine judicially whether under the particular facts of this case appellant was prejudiced. After considering the question at length we believe it is clear that no prejudice resulted. Although in saying it Mr. Murphy was improperly assuming the prerogative of the trial judge, what he said with reference to the State's burden was not incorrect. After all, it is true that in order to convict the State must prove an accused guilty beyond a reasonable doubt, and that the State has no higher or greater burden of proof. Mr. Murphy was not accurate, however, when he said that what reasonable doubt is would be explained in the instructions. MAI–CR 2.20 does not explain or define reasonable doubt, probably because "Reasonable doubt is reasonable doubt, and that is about all that can be said in regard to it." *State v. Talmage,* 107 Mo. 543, 17 S.W. 990, 991 (1891). The term needs no further definition. We do not see, however, how this inaccuracy could have prejudiced appellant. Although we con-

demn the practice and admonish all prosecutors, as well as defense counsel, not to inform or state to the jury what the law is, or what counsel thinks the law may be, we find nothing in the remarks which might have injured appellant's cause or prejudiced his case.

Appellant asserts error in connection with the admission of evidence introduced by the State to establish the value of the record albums allegedly stolen. The manager of the store, Robert Colson, testified that the 21 albums were the property of F. W. Woolworth Company; that invoices for the records were sent to Woolworth by the record distributor. Using an invoice dated June 24, 1975 (Exhibit No. 3) he testified that the total value of the 21 albums was "somewhere around eighty-eight dollars"; that he checks over these invoices as a part of his duties as store manager; that invoices are sent to him in the normal and ordinary course of business, and bills are paid by Woolworth on the basis of these invoices; and that 13 of the 21 albums found in appellant's satchel were duplicates. Appellant objected to Exhibit No. 2 on the ground of hearsay, and now contends that Colson was not properly qualified as the custodian of the records; that he did not testify that they were kept in the ordinary course of business or that the entries were made at or about the time of the transactions they reflect, or how they were kept or prepared in the ordinary course of business.

The evidence we have summarized meets the requirements of § 490.680, RSMo 1969, the Uniform Business Records as Evidence Act. It shows that the manager of the store, Mr. Colson, was custodian of the records; that he identified the invoice, accounted for its origin and transmission from the record distributor to Colson in the normal and ordinary course of business, near the time in question, and explained its mode of preparation, showing how the distributor indicates its identity by numbers which correspond with numbers on the computer labels on the records, and that the invoice contains the identification number of the Woolworth store. There was no

abuse of discretion in admitting the store manager's testimony, or in admitting Exhibit No. 3, in evidence.

■ In any event the testimony of the owner of personal property, *State v. Walker*, 365 S.W.2d 597 (Mo.1963); *State v. Matzker*, 500 S.W.2d 54, 57[9] (Mo.App. 1973), or the manager of a corporate outlet, without more, is sufficient to justify submission to the jury of the issue of the value of such property.

There was no error in refusing Instruction No. A, offered by appellant, on the lesser included offense of Attempted Stealing Over Fifty Dollars. Appellant contends the evidence did not prove as a matter of law that a stealing had taken place, and it was a jury question whether appellant was guilty only of attempting to steal.

■ The evidence clearly demonstrates a completed crime of Stealing as that crime is defined in § 560.156, RSMo 1969. It is incontrovertible under this evidence that the accused exercised dominion over the record albums in a manner inconsistent with the rights of F. W. Woolworth Company, by taking, obtaining, transferring, concealing and retaining possession of the albums. "[I]f one in the course of a robbery or larceny (and with the other elements present) gains control of the property *even for an instant,* the crime is complete." *State v. Murray*, 280 S.W.2d 809, 812 (Mo.1955). When and if appellant, with intent to steal, assumed possession of the record albums and placed them inside his satchel the crime of stealing was complete. When there is proof of a completed crime there is no necessity of giving an instruction on an attempted crime. *State v. Murray*, supra; *State v. Thomas*, 525 S.W.2d 833, 835[4] (Mo.App.1975).

■ There was no error in failing to declare a mistrial on objection and request of appellant when at the close of the State's case the assistant circuit attorney said, "Your Honor, as far as the jury is concerned, that would complete the State's evidence in this case." Appellant argues that this statement allowed the jury to infer that there was other evidence against defendant—prior convictions as well as other evidence even more damaging, limited only by the imagination of the jurors—which they would not hear, thereby prejudicing the minds of the jurors. We are not persuaded that this statement carried with it the implication suggested by counsel who, trained in criminal procedure and knowing that evidence of a previous conviction was about to be introduced outside the hearing of the jury, might place that interpretation on the statement. Instead, it is much more likely that the jurors, if they paid any attention to the statement, understood it to mean that the State had completed its presentation of evidence to the jury.

■ In closing argument the assistant circuit attorney, referring to the elements of the crime as set forth in an instruction, said, "If all four of those elements had not been proven, we would not be at this stage of the case." Appellant contends that the effect of this statement was to "cause the jury to infer that the Court had ruled that there was sufficient evidence in the case of the defendant's guilt and, therefore, the case was being submitted to them for a finding of guilty"; that by thus confusing the standard required to overrule a motion for acquittal and the standard required to convict, the jury was misled and defendant was prejudiced. The record shows that a formal objection was made to this statement and that the court sustained the objection. A motion for a mistrial was overruled. A request that the jury be instructed to disregard the statement was sustained, and the jury was so instructed.

The prosecutor's statement was unfortunate and uncalled for, but the court ruled properly. The rulings sustaining the objection and instructing the jury to disregard cured any error. There was no abuse of discretion in not aborting the trial for this infraction. Again, appellate counsel's training in criminal procedure and trial practice causes her to read into this statement more than a lay juror, untrained in the appellate standard of review of the sufficiency of evidence to sustain a criminal conviction, would be likely to sense.

■ Exception is taken to the fact that the verdict forms which went to the jury titled the case "STATE OF MISSOURI V. EDDIE JAMES VAN also known as EDDIE VANN." Appellant claims that since there was no reference at the trial to the use by appellant of an alias or that he had tried to hide his true identity when arrested or at any other time, there is a reasonable possibility that the use of the alias in the verdict forms might have contributed to the conviction by encouraging the jury to infer that at some time he had reason to try to hide his true identity, and that this carried an unfavorable connotation and reflected upon his character in an unwarranted and unnecessary manner. The State's explanation of the reason for titling the verdict forms in this manner is that appellant's name appeared in the certified transcript of his serial record as "Vann" whereas at the time of the offense he spelled his name V-a-n.

The Supreme Court has held that the suggested adverse implication cannot be drawn from the reference to one alias (as contrasted with a reference to numerous aliases). *State v. Loston,* 234 S.W.2d 535 (Mo.1950). Only one alias was used here. While the improper, unfair use of an alias could warrant granting a mistrial, *State v. Varner,* 329 S.W.2d 623, 626[3] (Mo.1959), we have concluded that in appraising the significance of the use of the one alias in the verdict forms " 'in relation to the processes of the trial as a whole,' " *State v. Trevino,* 428 S.W.2d 552, 553[1] (Mo.1968), the court did not abuse its discretion in this instance. *State v. Stubenrouch,* 499 S.W.2d 824 (Mo.App.1973). As in *Trevino,* the evidence of appellant's guilt was "well-nigh overwhelming." He was "caught red-handed" and the fact that an alias was referred to in the verdict forms (there being no showing that any juror noticed the fact) was of little or no significance in relation to the processes of the trial as a whole.

Judgment of conviction affirmed.

SMITH, C. J. and ALDEN A. STOCKARD, Special Judge, concur.