STATE of Missouri,
Plaintiff-Respondent,

v.

Ricardo CARMACK,
Defendant-Appellant.

No. 43314.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 6, 1982.

Motion for Rehearing and/or Transfer
Denied May 14, 1982.

Application to Transfer Denied
June 14, 1982.

Robert C. Babione, Public Defender, Christelle Adelman-Adler, Asst. Public Defender, St. Louis, for defendant-appellant.

George A. Peach, Circuit Atty., St. Louis, John Ashcroft, Atty. Gen., Nancy Kelley Baker, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant, Ricardo Carmack, appeals his conviction for rape, sodomy and first degree burglary following a jury trial in the circuit court of the City of St. Louis. Defendant was sentenced to ten years for rape, ten years for sodomy, these two terms to run concurrently, and five years for burglary, this term to run consecutively.

The evidence shows that early in the morning of January 16, 1980, defendant knocked on the door of the victim's house in St. Louis City. The victim answered the door and spoke to defendant. Testimony at trial revealed that the victim pushed defendant away and locked the door. While defendant tried to persuade her to let him in, the victim asked defendant to leave. Defendant began kicking at the door and the victim screamed. Defendant broke down the door and entered the victim's house, where he sodomized and raped her. When the police arrived one and one-half hours later, defendant was still in the house. At trial defendant claimed that on that morning he acted with the victim's consent. Defendant was subsequently found guilty by the jury, and this appeal followed.

Defendant's first point on appeal arises from the trial court's failure to sustain defense counsel's objections to remarks made to the jury by the prosecutor during voir dire. In addressing the jury panel, the prosecutor stated that the burden of proof for the State is beyond a reasonable doubt. He compared that burden to the burden of a preponderance of the evidence and further stated that reasonable doubt is not "any and all doubt or beyond any possibility of a doubt." He stated to the jury that "what lives in your mind is reasonable doubt." Defense counsel's objection to these remarks as an attempt to define reasonable doubt was overruled. The prosecutor continued, repeating that reasonable doubt is not "any or beyond any and all possibility." He concluded by asking the jurors if any of them would demand a higher burden of proof.

■ The applicable burden of proof instruction is MAI–CR 2d 2.20, (1979), which instructs the jury that the State's burden is to prove guilt beyond a reasonable doubt. The notes on use state that no other instruction may be given elaborating further upon, or attempting to define, reasonable doubt. Notes on Use, MAI–CR 2.20(3) (1979). This note applies to counsel as well as to the judge giving the instruction. *State v. Van*, 543 S.W.2d 827, 830 (Mo.App. 1976).

■ While it is not error for a prosecutor to discuss the concept of "beyond a reasonable doubt" without attempting to define it for the jury, *State v. Simmons*, 602 S.W.2d 13, 16 (Mo.App.1980), it is error for counsel to define "beyond a reasonable doubt." *State v. Van, supra*, at 830. Most of the prosecutor's comments in this case are similar to those made by the prosecutor in *State v. Van, supra*. There it was found to be error, though not prejudicial, when the prosecutor told the jury panel during voir dire what burden of proof rests upon the state and expressly differentiated reasonable doubt from any and all doubt. *Id.*

The court in that case found no prejudice to the defendant because nothing that the prosecutor said was incorrect. *Id.* We made a similar finding in *State v. Hurst*, 612 S.W.2d 846, 852 (Mo.App.1981). We follow these decisions and find no prejudice to defendant in the prosecutor's remarks.

In so finding, we follow the rule in Missouri that each party to a case is to have liberal latitude in the selection of a fair and impartial jury. *State v. Lumsden*, 589 S.W.2d 226, 229 (Mo. banc 1979). Voir dire examination of jurors is conducted under the supervision of the trial court and the nature and extent of what questions counsel may ask are discretionary with the trial court. *Id.* The court's exercise of that discretion will be disturbed on appeal only when the record shows a manifest abuse of that discretion. *Id.* The only legitimate limitation to a party's examination of jurors on voir dire would be at that point where questions or comments tend to create prejudice against the defendant. *State v. Granberry*, 484 S.W.2d 295, 299 (Mo. banc 1972). As in *State v. Van, supra*, and *State v. Hurst, supra*, we find nothing in the prosecutor's remarks which might have prejudiced the defendant's cause.

The second point defendant raises on appeal is that the trial court erred in allowing the State to endorse Audrey Edwards as a witness on the morning of the trial and in allowing Audrey Edwards to testify. Defendant claims that prejudice to his case resulted, in that he had insufficient time to prepare a response to Edwards' testimony.

Ms. Edwards lived in a tent across the street from the victim's home and was in that tent on the morning of January 16, 1980. Her testimony revealed that she was awakened by the sound of someone trying to break into the victim's house. She looked out the front of her tent and saw the victim at the upstairs balcony window and a man on the porch. Edwards testified that she saw the man break the door and enter the house, while the victim was screaming

for help. Later, Edwards told the neighbors what she saw and heard. The neighbors then called the police.

Rule 23.01(f) (1980) requires that all witnesses for the State be endorsed upon the filing of the indictment or information. The rule further provides that a court may allow additional names to be added upon notice to the defendant. The Missouri Supreme Court has interpreted this rule as discouraging the late endorsement of State witnesses. *State v. Strawther*, 476 S.W.2d 576, 579 (Mo.1972).[1] The court made it clear in that case, however, that late endorsement of a witness is permitted and that in the final analysis, it is up to the discretion of the trial court to permit or not permit late endorsement in any given case. *Id.*, at 579. A reviewing court is to reverse a trial court's decision on late endorsement only if there is an abuse of discretion by the trial court evidenced by a showing of prejudice to the defendant resulting from the witness's testimony. *Id.*, at 579. It is our duty, therefore, to determine whether the defendant in this case was prejudiced by the late endorsement of Edwards. We find no such prejudice to the defendant.

The court in *State v. Strawther, supra*, set out factors to consider in determining the effect of late endorsement. The appellate court must consider: whether defendant waived his objection to the witness's testimony, whether the State intended surprise, or acted deceptively or in bad faith with intent to disadvantage defendant; whether in fact defendant was surprised and suffered any disadvantage; and, whether the type of testimony given might readily have been contemplated. *Id.*, at 579–580.

In the case at hand, defendant never waived his objection to the witness's testimony. This is the only factor which can be resolved in the defendant's favor. Defendant made no allegations of any intent by the State to surprise defendant. The trial

---

1. Rule 23.01(f) (1980) was formerly Rule 24.17 (1978). Although the former rule was amended in some respects, we find that for purposes of this appeal the judicial interpretation of former Rule 24.17 applies with equal force to Rule 23.01(f).

court found no such intent. This finding was based on the prosecutor's statement that he had just located the witness on the day preceding trial and on the testimony of witnesses who claimed they had no knowledge of Edwards' whereabouts. The trial court below made every effort to ensure that no prejudice to the defendant would in fact result from Edwards' testimony. The court delayed its decision to let the witness testify until defense counsel had an opportunity to interview her in private. Consequently, the trial court found that the defense was aware of the content of Edwards' testimony and concluded that defense counsel had had access to information similar to that which Edwards was going to provide. Finally, the type of testimony given by Edwards might readily have been contemplated by the defendant. The testimony given by Edwards corroborated the testimony of the victim. Another witness testified that Edwards had been in a tent across the street from the victim's house on the morning of the crime and that she had spoken to Edwards about what Edwards "had seen" that morning. Given the testimony of these two witnesses, the nature of Edwards' testimony was certainly foreseeable. There is nothing in the record to indicate that defendant's counsel would have been better prepared to dispute Edwards' testimony, if given additional time. Since we find no prejudice to the defendant, we cannot say the trial court abused its discretion in allowing Edwards to testify. *State v. Lane*, 629 S.W.2d 343, at 345 (Mo. banc 1982); *State v. Strawther, supra*, at 580.

Defendant's final point on appeal is that the trial court erred in not declaring a mistrial after a juror indicated she knew the State's witness, Audrey Edwards. Defendant rests his claim on his right to a fair and impartial trial. The defendant claims, that, since a juror had a relationship with the witness prior to trial, the impartiality of that juror cannot be guaranteed.

During the recess which immediately followed Audrey Edwards' testimony in the trial below, juror Jones approached the sheriff, informing him of her acquaintance with Edwards. The sheriff informed the court of this and a conference was held with the judge, the juror and counsel for both sides. Jones revealed that she was a nurse technician at Central Medical Center and that Edwards had been a patient under her care on a number of occasions. Jones had not seen Edwards during the year preceding the trial. The court asked Jones if her acquaintance with Edwards would influence her evaluation of Edwards' testimony. Jones replied unequivocally, "No, it wouldn't." She further stated the acquaintance would not tend to make her either believe or disbelieve Edwards' testimony. She assured the court that she could consider Edwards' testimony independently of her knowing Edwards as a patient. Jones did not discuss the acquaintance with any other jurors except to seek advice as to whether she should tell the court of her prior dealings with Edwards. Defendant's right to an impartial jury is guaranteed. *State v. Spidle*, 413 S.W.2d 509, 513 (Mo. 1967). Defendant bases his claim that he was denied an impartial jury solely on the assumption that Jones' familiarity with a State witness, would negate her status as an impartial juror. Due to this alleged partiality, defendant claims the trial court erred when it refused to declare a mistrial.

The law is that the competency of a juror is a matter for the determination of the trial court, and its discretion in acting thereon should not be reversed unless that discretion has been clearly abused. *State v. Allen*, 485 S.W.2d 28, 31 (Mo.1972). This rule applies in situations where the court must determine the competency of a juror once the trial is underway. *State v. Allen, supra; State v. Armstrong*, 445 S.W.2d 367, 368 (Mo.1969). In *State v. Mullen*, 528 S.W.2d 517 (Mo.App.1975) the juror was asked on voir dire if she recognized the victim by name or if she recognized any of the victim's relatives in the courtroom. The victim's mother was not in the courtroom at that time and the juror answered in the negative to the two questions. Subsequently, the juror recognized the mother of the deceased during the trial, and so informed the sheriff. The trial court in

that case denied defendant's motion for a mistrial. In upholding the trial court's decision, this court set out three factors to consider in determining whether the defendant was prejudiced. First, how well the juror knew the person recognized. Second, whether an inaccurate answer to a question asked on voir dire was intentional or concealed, which might suggest prejudice. Third, the juror's own statement that he or she would not be influenced in deciding the facts of the case. *Id.*, at 521.

■ The facts in this case require a finding that the trial court was correct in denying defendant's request for a mistrial. As to the first factor, Jones did not know Audrey Edwards in any relationship other than technician-patient. In other Missouri cases a juror's mere acquaintance with a witness was not alone enough to sustain a challenge for cause. *See, e.g., State v. Dodson*, 551 S.W.2d 932, 934 (Mo.App.1977) (juror had a thirty-year acquaintance with a police officer who was to be a witness); *State v. Lawhorn*, 574 S.W.2d 455, 457 (Mo. App.1978) (witness had grown up in juror's neighborhood). The second factor must be considered in light of the late endorsement of Edwards as a witness. The situation is analogous to that in the *Mullen* case. Jones, like the juror in *Mullen*, had no way of knowing of her familiarity with the witness in the case until the trial was underway. Jones immediately informed the sheriff, which removes any question of concealment on behalf of Jones. The final factor to consider is the juror's own statement to the court that her acquaintance with Edwards would not influence her in deciding the case. It is the law that the trial court, and not the juror is to determine the juror's impartiality, but the juror's testimony concerning her ability to be impartial is evidence to be considered by the trial court. *State v. Reynolds*, 619 S.W.2d 741, 749 (Mo. 1981). There was no apparent equivocation in Jones' statements regarding her ability to remain impartial. The trial judge, who was in a position to view Jones' demeanor during his questioning of her, believed her. The competency of a juror is particularly a matter for the determination of the trial

court, and a ruling in this regard should not be reversed unless the court has clearly abused its discretion. *State v. Cotton*, 621 S.W.2d 296, 300 (Mo.App.1981). We find nothing in the record to support defendant's bare allegation that Jones was unable to be impartial. The trial court did not abuse its discretion in continuing with the trial.

Judgment affirmed.

SMITH, P. J., and SATZ, J., concur.