STATE of Missouri, Respondent,

v.

**Demetrius HERNDON, Appellant.**

**No. WD 34536.**

Missouri Court of Appeals,
Western District.

March 13, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 1, 1984.

Application to Transfer Denied June 19, 1984.

Joseph H. Locascio, Sp. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, C.J., and MANFORD and LOWENSTEIN, JJ.

MANFORD, Judge.

This is a direct appeal from a jury conviction for murder, first degree, in violation of § 565.030, RSMo 1978, forcible rape, § 566.030, RSMo 1978, robbery first degree, § 569.020, RSMo 1978, assault, first degree, § 565.050, RSMo 1978, and armed criminal action, § 571.015, RSMo 1978.

Appellant presents five points which in summary charge the trial court erred in (1) overruling his objections to questions by the prosecution during voir dire, because said questions were impermissible comments and definitions of proof beyond a reasonable doubt, (2) abusing its discretion in sustaining the prosecutions motions to strike certain venirepersons for cause, (3) instructing the jury on murder, first degree, (4) allowing a videotape of a prosecution witness, and (5) overruling his motion to suppress certain statements made by appellant to investigating officers.

No challenge is made to the sufficiency of the evidence, so a brief summary of the pertinent facts suffices. On the evening of July 4, 1981, appellant along with Robert Mayhue and Anthony Darrington went to a local convenience store in Kansas City, Missouri. The purpose of the trio was to seek out a robbery victim. They had secured a handgun earlier in the day. Between the hours of 11:30 p.m.—12:15 a.m. (July 4/5, 1981), an automobile occupied by the victims Ronald Fellman and Shardell Saper entered the store parking lot. As Fellman returned to the automobile (Saper was seated in the right front seat), appellant and his two accomplices displayed a handgun and robbed Fellman. The two then entered the automobile forcing Fellman to the rear seat. The automobile was driven from the store, and a short distance later Fellman was locked in the trunk of the automobile. The trio then raped Saper and she was then locked in the trunk with Fellman. The automobile was then driven to an area liquor store, during which time the victims attempted to pry open the trunk lid. At the liquor store Mayhue went inside. Fellman ultimately managed to get out of the trunk and started running from the auto-

mobile screaming for help. Appellant shot and murdered Fellman. Mayhue returned from the liquor store and the trio again drove the automobile around with Saper still in the trunk. Saper attempted to attract attention by extending a tire tool out of the trunk opening. She was observed by Mayhue. The automobile was stopped. Mayhue stuck the barrel of the handgun into the trunk shooting Saper in the face. Saper feigned death. The trio abandoned her and the automobile. Later Saper freed herself and sought help from area residents.

Appellant testified, as did six other witnesses, on his own behalf claiming he was at a neighborhood holiday party, thus claiming an alibi defense. The evidence closed. The jury returned its verdict. Judgment and sentence were entered. This appeal followed the overruling of timely filed post-trial motions.

Appellant's points (1) and (2) involve reference to the same portion of the transcript and present a bifurcated attack on the trial court arising from the voir dire. These points are taken up and ruled jointly. In summary, appellant charges (a) the trial court erred in overruling his objections to questions by the prosecutor because said questions were impermissible comments and definitions of proof beyond a reasonable doubt, and (b) the trial court erred by abusing its discretion when it sustained the prosecution's motion to strike certain venirepersons for cause.

For purposes of disposition of this bifurcated charged error, reference must be made to a portion of the transcript which reads as follows:

MR. SCHAFFER: All right. Another thing you will be instructed on is the burden of proof. You will hear that the burden of proof in a criminal case is beyond a reasonable doubt.

Is there anybody on the jury panel who feels in a criminal case, or especially a capital murder case, a rape and robbery, that the State should have to prove its case to a degree higher than simply beyond a reasonable doubt.

MR. LOCASCIO: Objection, Your Honor. May we approach the bench?

THE COURT: You may.

(Whereupon, the following proceedings were had in the presence but out of the hearing of the jury panel:)

MR. LOCASCIO: Your Honor, the State is defining for the jury what reasonable doubt is, and I think it is an area where the prosecutor should rely on the Court's instructions rather than the prosecutor attempting to define the standard of proof, that is what it gets down to, to defining that standard of proof.

THE COURT: I think the case law is clear there can be comment on the burden of proof by the prosecutor, I don't think he's defining it by his statements.

MR. LOCASCIO: The way he's asking the question, he's defining it for the veniremen, the standard of proof is not beyond all doubt, he's trying to define it.

THE COURT: I understand your objection and I disagree. The objection is overruled.

(Whereupon, the following proceedings were had in the presence and hearing of the jury panel:)

MR. SCHAFFER: The question still remains, is there anyone on the jury panel that feels in a criminal case that the State's burden of proof should be higher than the law itself says the burden is, is there anybody that the State's burden should be higher than merely beyond a reasonable doubt?

(No response.)

MR. SCHAFFER: Anybody who would expect the State, or require the State, to prove beyond all doubt—

MR. LOCASCIO: Objection, Your Honor.

(Whereupon, the following proceedings were had in the presence but out of the hearing of the jury panel:)

THE COURT: The objection is overruled, I understand your objection.

Go ahead and make your record.

MR. LOCASCIO: The prosecutor has now made reference to a different standard of proof, by making reference to

that standard of proof is, in fact, implying, or complying that the standard of proof is beyond a reasonable doubt, thereby he is defining that standard.

THE COURT: The objection is overruled. Let's proceed.

(Whereupon, the following proceedings were had in the presence and hearing of the jury panel:)

MR. SCHAFFER: Is there anyone who is going to require the State to prove its case beyond all doubt?

Ms. Florez, I thought that was what you were saying earlier on, and by raising your hand you're indicating you are going to require the State to prove its case beyond all doubt?

VENIREWOMAN FLOREZ: Yes.

MR. SCHAFFER: All right.

Is there anyone else who feels as Mrs. Florez does?

Mr. Ramsey and Mr. Archer?

Let's take one at a time.

Mr. Ramsey, are you indicating in a criminal case you would not be able to follow the instructions of the law in which the State would prove its case beyond a reasonable doubt, that instead you are saying that you would require that the State prove to you he's guilty beyond all doubt?

VENIREMAN RAMSEY: I would have to know for sure he was guilty before I would say yes.

MR. SCHAFFER: You would require the State to prove its case to you beyond all doubt?

MR. LOCASCIO: May we approach the bench, Your Honor?

THE COURT: Yes.

(Whereupon, the following proceedings were had in the presence but out of the hearing of the jury panel:)

MR. LOCASCIO: By dwelling on this subject, again, I'm objecting to the prosecutor's comparing the standard beyond a reasonble doubt to the standard beyond all doubt, and thereby defining that standard, I think the prosecutor dwelling on this subject—

THE COURT: Mr. Locascio, I think these trips up to the bench are placing far more emphasis on it than the prosecutor's questions.

I'm overruling the objection.

(Whereupon, the following proceedings were had in the presence and hearing of the jury panel:)

MR. SCHAFFER: Mr. Archer, you raised your hand?

VENIREMAN ARCHER: Yes, sir.

MR. SCHAFFER: You are saying that you would require the State to prove its case beyond all doubt?

VENIREMAN ARCHER: Yes, I would have to be absolutely certain before I would say a man was guilty of murder.

MR. SCHAFFER: Thank you, Mr. Archer.

Anyone else with a response?

Mrs. Barnes and I—excuse me.

Yes, Ma'am?

VENIREWOMAN FLETT: I am Gertrude Flett. I also feel the State would have to prove to me one hundred percent that the defendant is guilty before I could pass judgment.

MR. SCHAFFER: Thank you, Ms. Flett.

Appellant's points (1) and (2) are taken up and after full consideration are found to be meritless, and thus ruled against appellant because:

■ (1) The record clearly reveals the prosecutor was not defining reasonable doubt, but rather he was discussing it, and such action is permissible. *State v. Ball,* 622 S.W.2d 285, 288 (Mo.App.1981). The discussion of reasonable doubt, while not condoned by our courts, is not necessarily prejudicial error. *State v. Carmack,* 633 S.W.2d 218, 219 (Mo.App.1982). It is clear from the above record that the prosecutor was attempting to determine if any prospective juror would require proof "beyond a shadow of a doubt," "beyond all doubt," or "of one hundred percent certainty," because prospective jurors had responded with such answers. Viewed in its entirety, the comments by the prosecutor were "harmless in the context of the case."

*State v. Callahan,* 641 S.W.2d 186, 189 (Mo.App.1982).

■ (2) It is clear from the above record that the trial court was aware of and attentive to both the manner in which the prosecutor's comments were presented and toward the purpose of such comments, along with the position of appellant as disclosed by appellant's objection. The record shows the trial court exercised its discretion in light of the context of the examination. Trial courts are vested with "broad discretion in controlling voir dire examination .... On appeal, the exercise of the trial court's discretion will be disturbed only when the record shows a manifest abuse of that discretion." *Ball, supra* at 288. *State v. Weekley,* 621 S.W.2d 256, 258 (Mo. 1981). The record herein reveals no manifest abuse of discretion by the trial court.

■ (3) Appellant's contention that the prosecutor was bound to remain silent on the subject of reasonable doubt following no response by the jury panel to his general question is contrary to the duty imposed on both counsel and the trial court to determine if any prospective juror has any disqualifying factors. *State v. Williams,* 624 S.W.2d 127, 129 (Mo.App.1981); *State v. Ealy,* 624 S.W.2d 490, 493 (Mo. App.1981).

■ (4) The record reveals that inquiry by the prosecutor in fact disclosed two prospective jurors who were not qualified, because they disclosed that they would not follow the law, in that one venireperson required "absolute certainty," and another required proof of guilt of one-hundred percent. The purpose of the voir dire is to determine any bias or prejudice by prospective jurors so that both the accused and the state might secure a fair and impartial panel of jurors. *Ball, supra.*

■ (5) The exclusion of the two prospective jurors did not prevent appellant from having a full panel of qualified jurors. " 'When the action complained of is the striking of a juror, an appellant is not entitled to relief unless he can show that the jury finally empaneled was not impar-

tial.' " *Weekley, supra* at 258. There is nothing shown upon this record which even suggests, let alone establishes or proves, that the jury panel herein was not impartial.

■ (6) The trial court herein did not abuse its discretion in removing the two venirepersons for cause.

■ Under his point (3) appellant charges the trial court erred in instructing the jury on murder first degree, because the charge to which he stood for trial was capital murder, and since the jury was instructed also on murder first degree, (a count dismissed by the prosecution prior to trial), appellant was, in violation of the United States and Missouri Constitutions, required to stand trial for an offense with which he was not charged by indictment or information.

Appellant's point (3) is taken up and after full consideration is found to be meritless, and thus ruled against appellant because:

(1) The instant case was tried prior to the rule announced in *State v. Baker,* 636 S.W.2d 902 (Mo. banc 1982), thus making applicable the rule announced in *State v. Gardner,* 618 S.W.2d 40 (Mo.1981), and *State v. Fuhr,* 626 S.W.2d 379 (Mo.1982), that it was mandatory to instruct the jury on murder first degree in capital murder cases. *Baker, supra,* has been ruled not to be applicable retroactively, and hence does not apply nor control the instant case. *State v. Goddard,* 649 S.W.2d 882, 889 (Mo. banc 1983).

(2) There is no further error in the dismissal of the murder first degree charge and the subsequent instruction on murder first degree, because appellant herein had long been apprised of the charge of murder first degree, and also that an instruction on that charge would be submitted. *Goddard, supra,* and *State v. Holland,* 653 S.W.2d 670 (Mo. banc 1983).

■ Under his point (4), appellant charges the trial court erred in allowing an entire videotaped statement of a prosecu-

tion witness to be played to the jury to rehabilitate the witness, because the playing of the taped denied appellant the right to confront and examine a witness against him, and portions of the tape included direct reference to appellant's involvement in other crimes not related to the charges in issue at trial.

Appellant's point (4) is taken up and after full consideration is found to be meritless, and thus ruled against appellant because:

(1) Appellant, by cross-examination, injected the issue of whether the witness thought the incident was funny while discussing it with authorities. The following portion of the transcript reveals what occurred while appellant, via defense counsel, was cross-examining the witness:

Q. In fact, you had thought that particular incident itself was pretty funny when you were talking to the police, didn't you?

A. No, sir.

Q. Did you not laugh about the entire event in the video statement?

A. I didn't laugh about the event, what I was smiling about was I felt relieved of what happened, of the pressures that was on me for what happened that night, from the night when it first started happening, it really had hurted me, I knew I was wrong, and I didn't know exactly what to do, and when I did that, I felt I was doing the right thing, so I felt a whole lot better from doing what I did; when I laughed, it didn't have nothing to do with the statement or conversation at the time, it just had something to do with how I felt, that I was telling the truth, no matter what was the consequences.

(2) An inference was created that the witness was laughing about the matter during his interrogation by investigating officers. It was proper for the entire videotape to be shown to the jury under the rule announced in *State v. Houston*, 607 S.W.2d 183, 184 (Mo.App.1980), which declares, "It is well settled that '[u]pon redirect examination, a witness may properly be interrogated as to any matter which tends to refute, weaken, or remove inferences ... which might have resulted from testimony on cross-examination.' (Citations omitted)." Such procedure is not prohibited simply because it results in prejudice to the other party. *Houston, supra.* The purpose of the rule was announced in *State v. Hodges*, 575 S.W.2d 769, 774 (Mo. App.1978), as giving effect "to the natural justice of not allowing the jury to hear only a one-sided version of a conversation without giving the other party a chance .... The idea is to prevent any half-truths or false impressions by providing the jury any 'relevant remainder' which the jury needs in order to examine and weigh defendant's statement 'in light of the whole truth.'"

(3) The introduction of the entire videotape was permissible even though it might have included evidence deemed to be evidence of other crimes. *State v. Brown*, 607 S.W.2d 881, 886 (Mo.App.1980).

Under his final point (5), appellant charges the trial court erred in overruling his pre-trial motion to suppress statements made to an investigating officer, because said statements were obtained in violation of his right to remain silent in that appellant's rights to remain silent were not scrupulously honored.

Appellant's final point (5) is taken up and after further consideration is found to be meritless, and thus ruled against appellant because:

(1) The record reveals that appellant's right to remain silent was in fact scrupulously honored. There was an initial interrogation during which appellant "clammed up". The officer returned appellant to his jail cell. Some 6–7 hours later another officer, after giving appellant his *Miranda* warning the second time, began an interrogation. This second interrogation reveals appellant was given his *Miranda* warning. Appellant then asked the second officer what he was charged with, and the officer listed the multiple charges. Then the record reveals the following relative to the cross-examination of the police officers:

Q. Did you ask him if he would talk to you about that?

A. Yes.

Q. Did he indicate in some way that he would talk to you about that?

A. Well, he told me, he said, I really don't know what you're talking about. I asked him if he could recall what he had done during that time—

Q. What time were you talking about?

A. I actually didn't inform him of the time, I asked him if he recalled what he did the day before, or earlier that day, and he said he had stayed home all day with his girlfriend, he didn't leave the house except to go get a beer and he went to the Seven-Eleven on Troost, and the woman refused to sell him a beer and he said that he went back home.

Q. When you were talking to him about what he had done, you were talking to him about the events of the evening of July the 4th and the early morning hours of July the 5th?

A. Yes.

Q. After he told you that he had been with his girlfriend all day and he had only left to get a beer, did you ask him any more questions?

A. I asked him about a watch he had in his possession at the time he was arrested.

Q. Did he answer your question about the watch?

A. Yeah, he told me he had won it in a gambling game.

Q. Did you ask him any more questions after you asked him where he had been and what he was doing and how he came to be in possession of this watch?

A. No, he told me to take him back upstairs, he told me he had won the watch in a gambling game, he told me to take him back upstairs so he could be booked and post bond.

 The above record reveals appellant's voluntary discussion with the officer. The record also reveals that at the time appellant *again* ceased to talk, he was in fact returned to his jail cell. There is no showing that appellant's rights under *Mi-randa* were violated. The initial refusal, by the "clamming up" of appellant, did not prohibit the second officer from asking appellant if he again would talk to the officer. *United States v. Collins,* 462 F.2d 792 (2nd Cir.1972), cited in *State v. Taylor,* 559 S.W.2d 35, 37 (Mo.App.1977). The record reveals appellant voluntarily talked with the second officer after the officer asked him if he [appellant] would talk with the officer. *See State v. Kimball,* 613 S.W.2d 932, 941 (Mo.App.1981).

 (2) The now challenged second statement was brought into this case by way of impeachment of appellant's testimony. It was not a part of the state's case in chief. Appellant initially testified that he had obtained a watch (identified to be the watch of victim Fellman) from one Sidney Williams. During the "second interrogation" appellant had claimed to the officer that he had won the watch gambling. On cross-examination appellant was asked about his two different claims as to how he obtained the watch. Appellant admitted at trial that he had lied to the investigating officer. The so called "second statement," even if involuntary (which it was not), would not have been barred for impeachment purposes. *State v. Sager,* 600 S.W.2d 541, 556 (Mo.App.1980); *Oregon v. Hass,* 420 U.S. 714, 721, 95 S.Ct. 1215, 1220, 43 L.Ed.2d 570 (1975); *State v. Mitchell,* 622 S.W.2d 791, 796 (Mo.App.1981).

(3) From the whole of the record herein it is clear that appellant's statement to investigating officers was neither coerced nor involuntary. The trial court neither erred in overruling appellant's motion to suppress, nor in overruling appellant's trial objection to the prosecution's inquiry into appellant's inconsistent statement, as reflected by the so called "second statement".

Judgment affirmed.

TURNAGE, C.J., concurs.

LOWENSTEIN, J., concurs in separate concurring opinion.

LOWENSTEIN, Judge, concurring.

MAI–CR2d 2.20 instructs the jury the burden is on the state to prove beyond a "reasonable doubt" the guilt of the defendant. The Notes on Use following this instruction contain the following plain and unequivocal language: "[N]o other instruction may be given elaborating further upon or attempting to define ... reasonable doubt." Missouri case law contains such declarations that other than this instruction no further elaboration upon or attempt to define "reasonable doubt" may be made by the court or counsel. *State v. Van*, 543 S.W.2d 827, 830 (Mo.App.1976). Reasonable doubt is not to be further defined by anyone. *State v. Lumsden*, 589 S.W.2d 226, 229 (Mo. banc 1979), *cert. denied*, 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980). The term needs no further definition—"Reasonable doubt is reasonable doubt, and that is about all that can be said in regard to it." *State v. Tulmage*, 107 Mo. 543, 17 S.W. 990, 999 (1891); *State v. Van, supra* at 830.

In this case the prosecutor's questions went beyond "discussing" reasonable doubt and went into the definition of the term. No matter how you slice it, the only legitimate question under the reading of the instruction and the notes is to inquire of the panel members whether they will be able to follow this instruction as given by the court. *State v. Smith*, 422 S.W.2d 50, 68 (Mo. banc 1967), reversed on the grounds the prospective jurors' opinions or feelings on the rule of law is immaterial unless it keeps them from following the instructions.

The persistent line of questioning here by the prosecutor gave the state an advantage in picking a jury. The questioning was improper. Any such error is presumed prejudicial but may be harmless if harmless within the context of the case. *State v. Callahan*, 641 S.W.2d 186, 189 (Mo.App. 1982). Within the context of this case the defendant can show no prejudice. He can show no infirmity with the jury that decided this case. As in all the cases cited in this opinion, after all the implorations by

appellate courts condemning the practice of prosecutors or of defense counsel in defining or explaining to the jury as to what is the law, no conviction has been reversed for getting into this area on voir dire. In *Callahan, supra*, only when coupled with other error was the case reversed and remanded.

Even though the instruction and notes are so clear, the practice has been to warn the prosecutor not to tread in the area of reasonable doubt in voir dire or in closing, but if done, no error will result but don't do it again. The defendant is not afforded relief when the trial judge restrains him from this argument. A body of law has been instructed that is in conflict with the intended use of the instruction. A stone fence has been erected around the hallowed ground of reasonable doubt with an opening wide enough to allow any kind of intrusion into the area. The instruction and the note should be changed or enforced.