STATE of Missouri,
Plaintiff-Respondent,

v.

Charles MORRIS, Defendant-Appellant.

No. 13295.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 11, 1984.

Motion for Rehearing or to Transfer to
Supreme Court Denied Oct. 31, 1984.

Application to Transfer Denied
Dec. 18, 1984.

John D. Ashcroft, Atty. Gen., Dan Crawford, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Elise Branyan, Asst. Public Defender, Springfield, for defendant-appellant.

TITUS, Presiding Judge.

Defendant Charles Morris was jury-convicted of the class A felony of first degree assault, § 565.050[1], in the shooting of John Ettleman. He was sentenced to imprisonment for 20 years, § 558.011.1(1), and has appealed. Defendant was previously convicted of second degree murder, § 565.004 (now § 565.021.1), in the killing of Dennis Callaway and sentenced to confinement for 50 years. § 565.008.2 [now § 565.021.2 and § 558.011.1(1)]. The murder and assault charges arose from the same occurrence which transpired January 30, 1982. The details of the killing and assault may be learned from a reading of the excellent

---

**1.** Statutory references are to V.A.M.S. and Rule references are to V.A.M.R., unless otherwise noted.

opinion reported in *State v. Morris*, 662 S.W.2d 884 (Mo.App.1983).

Rule 28.02(a) specifies that "Prior to voir dire examination of the jury the court *must* read to the jury MAI–CR[2d] 1.02." (Emphasis supplied.) The Notes on Use relative to MAI–CR2d 1.02 repeat our just quoted portion of Rule 28.02(a) and observe that "The 'burden of proof' instruction included herein [i.e. in MAI–CR2d 1.02] is the same as MAI–CR[2d] 2.20." Both MAI–CR2d 1.02 and MAI–CR2d 2.20 admonish the jury: "The fact that the defendant has been charged with an offense is not evidence, and it creates no inference that any offense was committed or that the defendant is guilty. The defendant is presumed to be innocent unless and until, during your deliberations upon your verdict, you find him guilty. This presumption of innocence places upon the state the burden of proving beyond a reasonable doubt that the defendant is guilty. If the evidence in this case leaves in your mind a reasonable doubt as to the defendant's guilt you must return a verdict of 'Not Guilty'." Note on Use No. 3 under MAI–CR2d 2.20 states that "No other instruction may be given elaborating further upon or attempting to define the presumption of innocence or reasonable doubt."

During voir dire examination of the jury panel by the state and relative to the foregoing the prosecuting attorney said, inter alia, to the panel: "Now as the judge has read to you instructions, and you know this, that the State is required to prove defendant's guilt beyond a reasonable doubt.... But I want to make a distinction and ask you to make sure that you understand that when we talk about beyond a reasonable doubt that we do not mean and we're not talking about beyond all doubt. Beyond all doubt is different than beyond a reasonable doubt. Beyond a reasonable doubt does not mean beyond a shadow of a doubt. From what the judge has read and from what I've said you would agree then that when this case is over it would not be odd or strange that you would have some doubt. You all understand then that all we're going for is beyond a reasonable doubt. What we're looking for is a reasonable doubt. If you don't have a reasonable doubt, but you have some doubt, at the end of this case you still must find the defendant guilty. Do you all understand that? Have I made the distinction?" There was no response from the panel and defendant's counsel made no objection to the prosecutor's foregoing statements or questions.

Defendant's initial point relied on in this appeal, in effect, is that the trial court erred when it permitted the prosecutor to make the just quoted remarks and also to ask the just quoted questions to and of the jury panel during voir dire examination. As noted, supra, defendant voiced no objections to either the remarks or the questions. This point, in our discretion, may be considered upon appeal only if we detect that manifest injustice resulted from the remarks and questions or that a miscarriage of justice resulted therefrom. Rule 29.12(b).

■ After being admonished a myriad of times by appellate courts anent the dangers of attempting to define reasonable doubt or to discuss its supposed meanings in voir dire examinations and in closing arguments, trial prosecutors, who either do not read or comprehend appellate opinions, continue flirting with disaster in their examinations of and arguments to panels and juries regarding the subject. It is past time that state counsel take cognizance of such practices, totally terminate them and eliminate the problems thus ensuing to trial and appellate courts.[2]

---

**2.** Perhaps in an effort to quell this impulse to "explain" while at the same time providing juries needed insight into "reasonable doubt," our legislature has recently enacted § 546.070(4), RSMo Supp.1983 (effective October 1, 1984), which provides that "In every trial for a criminal offense the court shall instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving the verdict, which instructions shall include a definition of the term reasonable doubt." Accordingly, MAI–CR2d 2.20 (approved August 13, 1984; Mandatory October 1, 1984) has been revised to include the following:

It was improper for the prosecutor to state on voir dire examination of the panel that the state is required to prove defendant guilty only beyond a reasonable doubt and not beyond all doubt or a shadow of a doubt. Generally, error is presumed to be prejudicial and it is the duty of appellate courts to determine judicially whether, under the particular facts presented, defendant was prejudiced by the prosecutor's unwarranted declamations and inquiries. Remembering that the state's examination now complained of consumed less than one page of some forty pages of the transcript used by the prosecutor in his initial voir dire testing of the panel and that defense counsel apparently did not then consider the examination so offensive to defendant's cause as to warrant an objection thereto, we do not find that prejudice resulted. Albeit the statements and unanswered inquiries were improper, they were essentially correct in that, in order for the jury to convict defendant, the state had to prove defendant guilty beyond a reasonable doubt with no higher or greater burden of proof. *State v. Carmack*, 633 S.W.2d 218, 219–220[1–5] (Mo.App.1982); *State v. Taylor*, 626 S.W.2d 647, 648[1] (Mo.App.1981); *State v. Hurst*, 612 S.W.2d 846, 852[9–11] (Mo.App.1981); *State v. Van*, 543 S.W.2d 827, 830[1–5] (Mo.App. 1976). Defendant additionally complains that the trial court erred in sustaining the state's objections to his questioning of the panel in a vein similar to that undertaken by the state, supra. As observed, defendant did not object to the state's observations and inquiries, which he, for the first time, unsuccessfully raised upon appeal. How defendant may now competently contend the state's unobjected to inquiries were error when similar questioning on his

"A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

"Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that (a) (the)

part, subject to timely objections by the state, were proper wholly escapes us. Defendant's point is denied.

In his second point relied on defendant claims the trial court erred in failing to sustain his request to strike venire-person Edna Medlin for cause because during his voir dire examination of the prospective juror she "repeatedly stated she could not follow the court's instruction that the defendant was presumed innocent, thereby depriving the defendant of his right to a fully qualified pool of venire members, due process, a fair trial before an impartial jury and a right to effectively exercise his preemptory [sic] challenges."

The foregoing point relates to defense counsel asking the panel if anyone could not visualize the defendant as being "cloaked in innocence" and innocent until proven guilty. Mrs. Medlin responded that "I would just have to weigh the facts, but if there is a person that's been shot and all the evidence says he did it and he's here to prove innocence or guilt, well, I have some doubt in my mind right now that he's innocent.... I said I have some doubt that he's completely innocent right now since he's been accused of the crime." Thereafter the following colloquy occurred between the court and juror Medlin and between defense counsel and juror Medlin.

"THE COURT: Mrs. Medlin, the law requires the State to prove his guilt beyond a reasonable doubt. Whatever you feel about it at this time—have you made up your mind one way or another at this time or are you just willing to listen to the evidence?

JUROR MEDLIN: Well, his question was, did we think he was innocent and to me by him being here for trial I have some doubt that he's innocent.

defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty."

It is the hope of this court that these provisions will foreclose further random and extemporaneous explanatory references by counsel during voir dire, opening statement, and closing argument.

THE COURT: As of this time you don't know whether he's innocent or guilty?

JUROR MEDLIN: No, I have no idea now.

THE COURT: And you're not leaning one way or the other until you hear the evidence?

JUROR MEDLIN: No.

THE COURT: Can you listen to the evidence and base your decision solely on the evidence and find him guilty or not guilty?

JUROR MEDLIN: Yes. Yes, but I understood him to ask it in a different way.

THE COURT: I understand.

JUROR MEDLIN: Just to sit here and think he's not—that he's perfectly innocent now.

THE COURT: But are you willing to accept the fact that he's innocent until the State proves him guilty beyond a reasonable doubt?

JUROR MEDLIN: Yes.

THE COURT: And you're willing to do that?

JUROR MEDLIN: Yes.

THE COURT: All right. Go ahead.

[Defense Counsel]: Now Mrs. Medlin, let me make sure we're clear on this. At this time you presume and can follow the instruction that requires you to presume and believe that the defendant is innocent, is that correct?

JUROR MEDLIN: Yes, I do. But in another way if one of these other people over here, they're not accused of the crime so I don't think that they are guilty of shooting this person whereas he's sitting here and I'm not saying that he's completely innocent. But I would go by whatever come out in the trial.

[Defense Counsel]: Would you say that at this time you consider him more guilty than I am?

JUROR MEDLIN: I probably would since he's the one that's charged.

[Defense Counsel]: So you cannot at this time follow that instruction, is that correct?

JUROR MEDLIN: I think I could follow the instructions, but I thought the way you put your question while ago was what I couldn't go along with.

[Defense Counsel]: All right. Thank you, ma'am."

Defendant later moved that Mrs. Medlin be stricken for cause, claiming her answers indicated she could not follow the court's instruction that defendant was presumed innocent. The court thought otherwise but proceeded to question her further:

"THE COURT: Mrs. Medlin, I want to ask you another question or two. On this question of reasonable doubt among other things, can you listen to the instructions and listen to the evidence and then follow the instructions as given to you in arriving at your conclusion? ...

JUROR MEDLIN: I think so.

THE COURT: And you will require the State to prove his guilt beyond a reasonable doubt before you will find him guilty?

JUROR MEDLIN: Yes. I certainly would want that, yes.

THE COURT: All right. I'm going to refuse that challenge for cause."

▮ The court nisi is vested with a wide discretion in deciding the qualifications of a venireman. Ergo, its conclusions thereon will not be overturned upon appeal in the absence of a clear, certain abuse of that discretion and a real probability of injury to the defendant thereby. No obvious line may be drawn as to when a challenge for cause should be sustained. Although an appellate court may have done differently, it cannot, from this alone, say there was an abuse of discretion. Each case, as repeatedly stated, must be adjudged upon the facts peculiar to it. A trial judge's determination of the qualifications of a prospective juror as to whether he or she would be fair and impartial necessarily involves his judgment based upon personal observations, evaluations, interpretations and the demeanor and answers of the particular venireperson. As the trial judge is better positioned to make a more

correct determination of that matter than are we from a cold record, any doubts as to its findings will be resolved in its favor. *State v. Smith*, 649 S.W.2d 417, 422[5–7] (Mo. banc 1983), cert. denied, —— U.S. ——, 104 S.Ct. 262, 78 L.Ed.2d 246.

■ Mrs. Medlin initially stated that because a person had been shot and defendant was charged with the shooting, she harbored "some doubt that he's completely innocent right now." However, after being told and questioned by the court concerning the law requiring the state to prove defendant guilty beyond a reasonable doubt, Mrs. Medlin acknowledged that she then had no present idea of the defendant's guilt or innocence, that she was leaning in no particular direction until she heard all of the evidence, that she would base her decision as to guilt or innocence solely upon the evidence presented, and that she was willing to accept the fact defendant was innocent until the state proved him guilty beyond a reasonable doubt. Predicated upon the facts and Mrs. Medlin's responses to the court's interrogation, the trial court did not commit a clear abuse of discretion in overruling the challenge for cause. *State v. Youngblood*, 648 S.W.2d 182, 185[3] (Mo. App.1983); *State v. Harrell*, 637 S.W.2d 752, 756[1] (Mo.App.1982). The point is denied.

Defendant's third point contends that after the evidence in the case had been completed and the jury had been excused from the courtroom while court and counsel were engaged in an instruction conference, the trial court erred to defendant's prejudice when it failed to declare a mistrial after being advised by defense counsel that he had witnessed a hall conference between the sheriff and one of the jurors.

The jury had been sequestered per defendant's request and had been repeatedly instructed at all recesses that "Until you retire to consider your verdict you must not discuss this case among yourselves or with others or permit anyone to discuss it in your hearing. You're not to form or express an opinion about the case until it's finally given to you to decide." Following defendant's motion, the court summoned the sheriff into the courtroom and had him sworn. The sheriff testified that at the last court recess he had about a five minute conversation in the hall with juror Jim Butler. The testimony of the sheriff was: "I just had a conversation with one [of the jurors] in regard to a tractor. Nothing about this case whatsoever.... I own a tractor that he's overhauling and I asked him when it was gonna be done and what condition the engine was in. He replied to the questions. He mentioned first, he wanted to know if I knew the tractor had been bored out to a larger piston and after he had asked me that I asked him when it was going to be done and what else was wrong with it." Further testimony by the sheriff was that the juror, not he, had initiated the conversation. The motion for a mistrial was denied.

■ The problem presented here is not unique. See 13 Mo.Dig.2d—726—728, Criminal Law Key No. 855(8). If a juror engages in an unpermitted communication, the state has the burden to show he was not subjected to an improper influence. *State v. Mullen*, 528 S.W.2d 517, 520[1] (Mo.App.1975). However, most courts jumble innocent and innocuous greetings and conversations betwixt a juror and a witness or court official with discussions concerning the merits of the cause. Ideally any such communication, albeit innocent, should be wholly avoided though contrary to human experience, especially among gregarious persons. The proper admonition given the jury was that it was not to discuss the case with anyone or to form or express an opinion concerning the cause until the matter was finally submitted. While the colloquy may have appeared suspect, it was not. Also, it was brief, casual and wholly unrelated to anything or any issue on trial. The trial court did not abuse its broad discretion in refusing to declare a mistrial because of the harmless encounter initiated by the juror. *State v. Martin*, 624 S.W.2d 879, 882[8–9] (Mo.App.1981). The point is denied.

To better understand the next point relied on we furnish the following *dramatis personae:*

John Ettleman—the shooting victim in this case

Dennis Callaway—the murder victim in *State v. Morris,* 662 S.W.2d 884

Charles Morris—the defendant herein and in *State v. Morris,* supra

Steven Ianniello—intended marijuana buyer

David Arles—intended marijuana buyer

During the state's opening statement to the jury in the trial of the instant case, the prosecutor said the evidence would show the following: Ettleman was acquainted with the other members of the cast and was aware that Callaway sold "marijuana on occasion." Ianniello, Arles and defendant approached "Ettleman and asked if he knew where they could get some marijuana. He said 'Yes, I know.' He was thinking of Dennis Callaway. So John Ettleman was the go between ... for Dennis Callaway who was selling marijuana" and Ianniello, Arles and defendant who were "purchasing marijuana." On Friday, January 29, 1982, Ettleman and Callaway, in the latter's car and accompanied by Callaway's girl friend, drove from Lamar to Golden City. Callaway had marijuana in a suitcase in the trunk of his vehicle. Upon reaching Arles' Golden City residence, Ettleman went to the door and knocked. Arles responded but refused to consummate the marijuana deal because of the presence of Callaway's girl friend. The next day, Saturday, January 30, 1982, Ettleman arranged for another meeting that night at Arles' house where Ianniello, Arles and defendant "were going to buy the marijuana." [3]

After the prosecutor made the foregoing assertions in the state's opening statement,

defense counsel approached the bench complaining: "There's been no disclosure that the defendant was involved ... in any marijuana transaction or had any interest in a marijuana transaction. The prior testimony of this witness John Ettleman is that ... Charles Morris did not have any interest and he took part in none of the negotiations for the marijuana. We would ask for a mistrial based upon either failure to disclose this evidence or the misstatement of the Prosecutor as to what the evidence will be." The Court: "I don't know about the failure to disclose, but I read some of the statements in the file and I think it's contained in the statements." The Prosecutor: "Yes." The Court: "I thought it was." The Prosecutor: "I anticipate that Ettleman will testify just like I've said." The Court: "Objection overruled. Motion for mistrial be refused."

Defendant's fourth point relied on contends the court erred in failing to grant a mistrial for the reasons enumerated in his objections to the state's opening statement, supra. Defendant's argument that the prosecution did not, in fact, make a pretrial disclosure of the evidence referred to in the opening statement is premised wholly upon counsel's statement to the court and the assertions contained in his new trial motion and brief. Bare allegations, whether made in a motion ore tenus, in a new trial motion or in a brief, which are unsupported by the record, exhibits or transcript are not to be considered on appeal. *State v. McMillin,* 581 S.W.2d 612, 616[7] (Mo.App.1979). As the record before us contains nothing concerning required pretrial disclosure or the lack thereof, that segment of defendant's point is not for our consideration. Therefore, our concern with the fourth point will be limited to defendant's claim the prosecutor, in his

---

**3.** Ettleman testified at trial that he and Callaway took marijuana to Arles' home Saturday night and that he, Callaway, Ianniello and Arles smoked "a couple of joints." Ianniello left the living room three times to go into Arles' bedroom. After the third trip, defendant emerged from the bedroom with a pistol and shot Ettleman in the mouth. Ettleman fell face down onto the floor but saw Callaway turn around and heard three more shots. Ianniello said Ettleman should be shot again and defendant said go ahead. Someone then shot Ettleman in the neck. Following this the pockets of Ettleman and Callaway were emptied and they were driven into the country and left for dead.

opening statement, had no evidence or reasonable ground to believe there was evidence that defendant was directly involved in the supposed drug transaction.

During the state's direct examination of Ettleman he testified that in January 1982 he had arranged a marijuana transaction between Callaway, as the seller, Ianniello, defendant and Arles, as the buyers. During cross-examination Ettleman stated he had never testified defendant was at Arles' house to purchase marijuana because he knew nothing of defendant's presence at the residence until defendant emerged from the bedroom and shot him and Callaway. But an effort at making the foregoing contradiction in testimony, if so, reversible error is true tedium at best.

The first marijuana sale-buy trip to Arles' home was thwarted because of the presence of Callaway's girl friend. The second and fatal trip was accompanied by the admonition that only Callaway and Ettleman were to go to the place of sale and purchase. Taking into account the events which transpired after Ettleman and Callaway arrived on the second trip (see footnote 2, supra), it is patent the lone purpose of the supposed marijuana transaction was to lure Ettleman and Callaway into company with defendant, Ianniello and Arles so that defendant could conduct the planned execution of Ettleman and Callaway. Defendant's involvement with the marijuana purchase as bait for the lethal trap cannot be doubted and there may be no justifiable claim that defendant was prejudiced by the prosecutor connecting him to the drug in his opening statement. When the entire evidence is considered and defendant's obvious connection with the marijuana as a means of enticing Ettleman and Callaway to their intended murderous demise, we can conjure no reason to find the trial court abused its discretion in denying defendant's motions and subsequent pleadings for a mistrial. *State v. Chamberlain*, 648 S.W.2d 238, 240–241[5, 6] (Mo.App.1983). Obviously, we deny the point.

Defendant's fifth and final point is that the trial court erred in denying his motion to suppress as evidence a pair of socks taken from him following arrest and to suppress a gunshot residue kit used to determine if he had recently fired a weapon. Defendant contends such evidence was the product of an illegal arrest because he was arrested by a Jasper County deputy sheriff in Lawrence County who was without a valid arrest warrant.

At the hearing to suppress the evidence above noted, a Jasper County deputy sheriff testified he had interviewed Ettleman shortly after the authorities had been notified of the killing and shooting. Because Ettleman had been shot in the mouth and neck and was bleeding profusely, he could not talk. However, the deputy supplied Ettleman with writing paraphernalia thereby permitting Ettleman to inform the deputy that defendant had shot him and Callaway. From other sources, the deputy was advised where defendant could be found. The deputy, accompanied by other officers, including members of the highway patrol, went to the advised location (about 100 yards across the Jasper County line into Lawrence County) and arrested defendant. Another deputy read defendant "his Miranda Warnings" before he was incarcerated and his stockings were removed and the gunshot residue test administered.

The answers to the assertions made by defendant in his fifth point repose in *State v. Morris*, supra, 662 S.W.2d at 892–893[15–21], and need not be repeated here. Moreover, we need not consider whether a Jasper County deputy sheriff may make a warrantless lawful arrest in Lawrence County or whether the arrest herein could be considered lawful on the basis of the hot pursuit doctrine. In Missouri even a private citizen may make a valid arrest when it is shown, as here, that a felony has been committed and reasonable grounds exist to suspect the arrested person. *State v. Gay*, 629 S.W.2d 470, 473[5] (Mo.App.1981). Defendant's final point is denied and the judgment of conviction is affirmed.

FLANIGAN and GREENE, JJ., concur.