STATE of Missouri, Respondent,

v.

Scott A. HILL, Appellant.

No. 73667.

Supreme Court of Missouri, En Banc.

March 24, 1992.

Ellen H. Flottman, Columbia, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

PER CURIAM.

The defendant was convicted of trafficking drugs in the first degree, in violation of *§ 195.222.4, RSMo Supp.1989,* and was sentenced to a term of 30 years without probation or parole. The evidence showed that he sold 500 "hits" of LSD to an undercover narcotics officer for $1,000. A hit is a single dose. He delivered the 500 hits on four sheets of blotter paper about three to three and a half square inches in size and containing 100 hits each, and four quarter sheets containing 25 hits each. The defendant invokes our jurisdiction by challenging the constitutional validity of *§ 195.222.* He raises five points on appeal. We affirm.

The challenged statute reads as follows:

A person commits the crime of trafficking drugs in the first degree if, except as authorized by sections 195.005 to 195.-425, he. distributes, delivers, manufactures, produces or attempts to distribute, deliver, manufacture or produce more than five hundred milligrams of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD). Violations of this subsection shall be punished as follows:

\* \* \* \* \* \*

(2) If the quantity involved is one gram or more the person shall be sentenced to the authorized term of imprisonment for a class A felony which term shall be served without probation or parole.

The range of punishment for a Class A felony is "not less than ten years and not to exceed thirty years, or life imprisonment." *§ 558.011.1(1), RSMo 1986.*

■ The state's evidence demonstrated that the blotter paper, impregnated with the solution, weighed much more than 500 milligrams. The defendant claims that the weight of the LSD alone was infinitesimal and that the blotter paper cannot reasonably be understood to be "a mixture or substance" within the terms of the statute. Alternatively, he suggests that, if the statute is construed to punish offenders according to the weight of the paper used, it violates the due process clause of our state constitution. *Mo. Const. art. I, § 10.*

The defendant acknowledges that similar arguments based on the federal due process and equal protection clauses were rejected in *Chapman v. United States,* —— U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). In applying the due process clause of our own constitution, we elect to follow *Chapman.* The statute adequately warned the defendant that something besides the weight of the LSD would be considered in determining the authorized punishment. The legislature's use of "mixture" and "substance" indicates its disposition to punish for whatever vector an offender might choose.

■ The defendant also contends that the sentence of 30 years without possibility

of probation or parole constitutes cruel and unusual punishment under the eighth and fourteenth amendments to the federal constitution, or under art. I, § 21, of the Missouri Constitution. The federal constitutional argument is foreclosed by *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). In *State v. Repp,* 603 S.W.2d 569 (Mo. banc 1980), we noted the great deference paid to the legislature's prescription of punishment. LSD is considered by the legislature to be a very dangerous substance. Drug trafficking is a serious matter, and the legislature could properly mandate a severe sentence. We reject the cruel and unusual punishment claim.

■ The defendant next argues that the state impermissibly introduced evidence of other crimes. The state showed that the officer initially tried to purchase 1,000 hits. The defendant said that he only had 500 hits available, but could produce 500 more later in the day. The state also played a tape of the transaction between the defendant and the undercover officer. The taped conversation included the officer's remark, "These kids down in Ozark eat this shit like candy. Boy, they love it." The defendant replied, "Oh yeah, they'll love it. They'll like it a lot." The state also presented evidence that after the defendant and undercover officer were arrested together, the defendant suggested that he and the officer could do business again after things cooled down. The defendant protests admission of his statements and of the quoted portion of the tape. He argues that the evidence tended to link him with other crimes and was prejudicial.

The statements were part and parcel of a single transaction. *State v. Kenley,* 693 S.W.2d 79, 82 (Mo. banc 1985), *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986). The conversations, moreover, show the defendant's knowledge of the nature of the substance he was selling and his purpose of delivering a substantial quantity of LSD to the buyer. The trial judge was not obliged to exclude the statements.

Five jurors who indicated that they could not consider life imprisonment were excluded from the jury. The defendant claims that the exclusions violated his right to due process under the rule announced in *Witherspoon* and refined in *Witt.* We reject the contention. It is not error to sustain a challenge for cause if a full panel of qualified jurors is presented for peremptory challenges. *State v. Jones,* 749 S.W.2d 356, 360 (Mo. banc), *cert. denied,* 488 U.S. 871, 109 S.Ct. 186, 102 L.Ed.2d 155 (1988). Moreover, error in sustaining a challenge for cause is not ground for reversal in the absence of abuse of discretion and prejudice to the defendant.[1] Otherwise, judges would face an impossible dilemma in ruling on challenges. *Witherspoon* and *Witt* make an exception in death penalty cases. We see no reason to extend that concept to other cases.

The prosecutor's inquiry, furthermore, was about the potential jurors' willingness to consider life imprisonment. The jury did not assess a sentence of life imprisonment. By analogy to the cases holding that an improper *Witherspoon–Witt* excusal does not demonstrate reversible error if the jury does not assess the death penalty,[2] the excusals in this case did not constitute reversible error because the jury did not assess life imprisonment.

The defendant finally argues that the prosecutor sought to minimize the impact of the mandatory sentence by saying, "clemency, the law can change, anything [can] happen." The defendant admits that he took no objection to this argument, and for this reason we deny relief. *See State v. McMillin,* 783 S.W.2d 82, 98 (Mo. banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990).

It is extremely important, moreover, to view challenges to closing argument in context. The state suggests that the challenged argument responded to defense counsel's statement that:

> No matter how well Mr. Hill might do in prison, no matter what the possibilities

of rehabilitation are in prison, he would not get out without a minimum of ten years and up to life imprisonment without parole or probation.

The state's argument in response certainly did not give rise to plain error.

The judgment is affirmed.

ROBERTSON, C.J., and RENDLEN, COVINGTON, HOLSTEIN, BENTON and THOMAS, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

BLACKMAR, Judge, concurring.

I concur in the *per curiam* opinion, but feel that some additional observations are in order.

### 1. Mandatory Sentence

It is my opinion that the circumstance that a sentence is within the statutory limits should not foreclose judicial scrutiny for compliance with the Eighth Amendment to the United States Constitution and *art. I, § 21* of the *Missouri Constitution.* I agree with Justice Kennedy that "extreme sentences that are 'grossly disproportionate' to the crime" may constitute cruel and unusual punishment. *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 2705, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring). For the reasons stated in the *per curiam* opinion, neither the authorized range of sentencing nor the sentence pronounced in this particular case is extreme or grossly disproportionate.

The stipulation that the sentence be served without probation or parole does not render it cruel or unusual. This provision simply eliminates one possibility for early release. The governor's power to grant "reprieves, commutations and pardons," *Mo. Const. art. IV, § 7,* remains, and is appropriate for consideration in the total equation. *Harmelin,* 111 S.Ct. at 2702.

### 2. Witherspoon–Witt

The prosecutor questioned members of the venire as to whether they would consid-

---

1. *See State v. Morris,* 680 S.W.2d 315, 319–20 (Mo.App.1984); *State v. Huffer,* 424 S.W.2d 776, 779 (Mo.App.1968).

2. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 1790, 20 L.Ed.2d 797 (1968); *State v. Davis,* 653 S.W.2d 167, 174 (Mo. banc 1983).

er a sentence of life imprisonment if the defendant were convicted. Several said that they would be willing to consider life imprisonment after hearing the evidence. The prosecutor sought to exclude these jurors or to get them to make a further commitment, saying that jurors had to be willing to consider the range of punishment "up front." The assertion is strange, and I find no support for the prosecutor's statement that "this is the law of Missouri." Jurors should not consider any issue until they have heard the evidence. Those jurors who indicated unwillingness to make a decision until hearing the evidence simply expressed a requirement that all jurors should impose.

The prosecutor's suggestions might present dangers in a case governed by *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Even though we conclude that there is no *Witherspoon–Witt* problem in this case, I believe that it is appropriate to comment on a matter which came up in the course of the trial and which, if carelessly applied in a capital case, might result in an unnecessary reversal.

With these observations, I concur.