STATE of Missouri, Respondent,

v.

Orville CHILDRESS, Appellant.

No. WD 47744.

Missouri Court of Appeals, Western District.

June 7, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 1994.

Application to Transfer Denied Sept. 20, 1994.

James Roy Brown, Kearney, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and ELLIS, JJ.

HANNA, Presiding Judge.

The defendant appeals his conviction of trafficking of marijuana in the first degree, § 195.222.7(1), RSMo Supp.1993,[1] a class A felony. The jury assessed punishment at twenty years and the court imposed that sentence in accordance with the verdict. The two issues on appeal are whether the testimony concerning the weight of marijuana was sufficient to qualify the crime as a class A felony and whether the trial court erred by failing to quash the venire or conduct an independent inquiry of the venire because of one venireperson's response to the prosecutor's voir dire question.

Mr. Dan Peach made a "deal" with police officers telling them of a "barnload of dope" behind his house in Richmond, Missouri, and identified the individuals involved in the operation. Mr. Peach told the Ray County Sheriff's deputies that on September 10, 1991, the defendant came to his house and retrieved 300 pounds of marijuana. He advised them that during the two previous months the defendant and his men had been bringing marijuana to his barn for processing. He estimated that they had dried and processed over 1,000 pounds of marijuana during the previous two-month period. The marijuana was brought to the barn in big trash bags and left to dry in the sun. The tops of the plants would be removed and the rest of the marijuana would be de-stemmed. A trash compactor was used to bail the marijuana and water was mixed with an orange extract and sprayed on the marijuana to mask its odor. The marijuana would be weighed on a scale, packaged in one-pound bags, and shipped to a location in northeast Kansas City where it would be compacted into five-pound bricks.

Mr. Peach was paid $100 per day to pick marijuana in exchange for the use of his barn to dry and process the drug. The marijuana was picked by the defendant, Mr. Peach and several others including the defendant's brother-in-law, J.R. Carter, Mike Riley, and the defendant's brother, Tony Childress. They would pick the marijuana in Mosby or Weston and then take it to Mr. Peach's barn for further processing.

As a result of Mr. Peach's information and with his consent to search his property, the Ray County Sheriff's deputies went to his residence during the early morning hours of September 11, 1991. They found marijuana and some zig zag papers in his kitchen cabinets and in the headboard of his bed. Inside the barn, the deputies found what appeared to be a marijuana processing operation. The floor was covered with tin and lying on the tin was a "fairly large quantity of marijuana," and its residue that had not been completely swept up. They also discovered trash bags, a container, a trash compactor, scales for weighing the marijuana, scissors, twine and several bottles of orange extract.

The deputies seized the marijuana, the trash compactor and the other items and kept the property under surveillance until approximately 10:30 or 11:00 that evening. When they returned the next morning they

---

1. For the sake of consistency, we cite to the 1993 Supplement to the Missouri Revised Statutes. However, we note that since the statutes discussed were last amended in 1989, the 1993 statutes are identical to those in effect at the time defendant committed and was convicted of the crime charged.

discovered that four containers of marijuana had been delivered to the house after they had ended their surveillance.

Mr. Peach continued to cooperate in the police investigation. During the next several days he made a series of telephone calls to the defendant, five of which were tape recorded. In those telephone conversations, the defendant acknowledged he had delivered the containers of marijuana to Mr. Peach's barn and indicated that he, or someone working for him, would be over to pick them up.

During the afternoon of September 14, Mr. Peach called the defendant and asked him when he was going to get the marijuana. The defendant told Mr. Peach that Tony Childress and Riley had already left and were on their way to his house. Childress and Riley were arrested by the Ray County Sheriff's deputies and a Missouri Highway Patrol officer when they arrived at Peach's house at approximately 1:00 p.m.

The substance that was seized from Mr. Peach's house was confirmed by a laboratory analysis to be marijuana with a total weight of 30,287.12 grams.[2] The marijuana was placed in evidence bags and introduced at trial. The statute, discussed later, that was the basis of the jury submission, calls for a weight of thirty kilograms of a mixture or substance containing marijuana. Two forensic chemists testified as experts. Both testified that the material seized was marijuana, but that before weighing the marijuana, they did not remove the stems and seeds. Witness McCarty testified that the plants contained moisture, which was not unusual, and that he had not tested the seeds to see if they could germinate. In response to defendant's question, he testified that the substance was "all marijuana plant" and it did not contain horseweed or any other type of plant material. He further identified the presence of dirt in the plants. He did check the exhibits to a "reasonable degree" to make certain that all of the material submitted was marijuana. Witness Martin said she could not testify to the weight of the marijuana less the stems and seeds and had not tested the seeds to determine if they would germinate.

The defendant's motion to dismiss at the close of the state's and all of the evidence was overruled. The state's verdict director instruction submitted the lesser included offense of trafficking in the second degree. The jury returned their verdict finding the defendant guilty of trafficking in the first degree, a class A felony, and assessed a sentence of twenty years. The defendant's timely motion for judgment of acquittal or alternatively for a new trial was overruled and the court sentenced the defendant in accordance with the jury verdict to twenty years imprisonment. The defendant filed his notice of appeal to this court.

■ In his first point, the defendant challenges the evidence concerning the weight of the marijuana. Trafficking in drugs in the first degree requires thirty kilograms by weight of a mixture or substance containing marijuana to establish the crime as a class A felony with accompanying punishment. In support of his argument, the defendant cites *State v. Bethel*, 569 S.W.2d 270 (Mo.App. 1978), and *State v. Hyzer*, 811 S.W.2d 475 (Mo.App.1991). Both cases involved the sale of marijuana in which the amount sold was within a small fraction of the statutory line of demarcation of the weight. *Bethel* was a prosecution for the violation of former § 195.020, RSMo Supp.1975. *Bethel*, 569 S.W.2d at 271. *Hyzer* involved a prosecution for the violation of § 195.211.2, RSMo Supp. 1990. *Hyzer*, 811 S.W.2d at 477. Both of these cases cited by the defendant state that the trial court erred by failing to instruct on the lesser included offenses of the crime charged. In *Hyzer*, the court erroneously failed to instruct on the class C felony of selling five grams or less of marijuana because the evidence proved that the marijuana might have been mixed with a non-controlled substance, and the weight of the controlled substance was the single factor that determined the range of punishment. *Id.* at 478.

In *Bethel*, the applicable statute established twenty-five grams as the demarcation line between a felony and a misdemeanor in

---

**2.** One kilogram equals one-thousand grams, making the weight in kilograms approximately 30.29.

the sale of marijuana, and the chemist did not know if the seeds, which were found in the marijuana, were sterilized and incapable of germination or how much the seeds weighed. *Bethel,* 569 S.W.2d at 271. The trial court erred by not instructing on the lesser included offense of delivering less than twenty-five grams of marijuana without remuneration. *Id.* at 272.

Neither case involves the statute in question in this case, § 195.222.7(1), RSMo Supp. 1993, which addresses trafficking in drugs and states in pertinent part:

> 7. A person commits the crime of trafficking drugs in the first degree if, except as authorized by sections 195.005 to 195.-425, he distributes, delivers, manufactures, produces or attempts to distribute, deliver, manufacture or produce more than thirty kilograms *of a mixture or substance containing marijuana.* Violation of this subsection shall be punished as follows:
>
> (1) If the quantity involved is more than thirty kilograms but less than one hundred kilograms the person shall be sentenced to the authorized term of imprisonment for a class A felony;

(Emphasis added). The emphasized portion of the statute prohibits not the trafficking of more than thirty kilograms of marijuana but rather, of more than thirty kilograms of "a mixture or substance containing marijuana." Section 195.010(26), RSMo Supp.1993, defines marijuana as excluding "the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant ... or the sterilized seed of the plant which is incapable of germination."

The issue before the court is the sufficiency of the evidence to support the manufacture and production of over thirty kilograms of a mixture or substance containing marijuana. The statute identifies four unlawful activities: distribution, delivery, manufacture and production of a controlled substance. § 195.222.7. "Manufacture" is defined as "the production, preparation, propagation, compounding or processing of drug paraphernalia or of a controlled substance ... either directly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container." § 195.010(25), RSMo Supp. 1993. Production "includes the manufacture, planting, cultivation, growing, or harvesting ... of a controlled substance." § 195.-010(35), RSMo Supp.1993.

The definitions of both terms explain the inclusion in the trafficking statute of the phrase, "a mixture or substance containing marijuana." The production or manufacture of marijuana can include the addition of extraneous items to the drug itself, one example being the orange spray used to mask the odor of the plant in order to avoid detection. Additionally, the manufacture and production of marijuana may involve certain minimal levels of dirt. Under these circumstances, the precision required in the *Bethel* and *Hyzer* cases is not necessary.

An analogy is drawn to the facts in *State v. Hill,* 827 S.W.2d 196 (Mo. banc 1992), in which the Missouri Supreme Court examined the phrase "mixture or substance" containing a detectable amount of LSD and held that no due process violation occurred in those situations when the paper holding the LSD was weighed along with the drug to reach a total weight of 500 milligrams. *Id.* at 198. That weight established the crime as first degree drug trafficking and required sentencing as a class A felony. *Id.* The defendant sold 500 "hits" (each hit is a single dose) on four sheets of blotter paper about three to three and a half square inches in size and containing 100 hits each, and four quarter sheets containing 25 hits each. *Id.* at 197. The defendant's argument was that the weight of the LSD itself was infinitesimal and the blotter paper could not reasonably be understood to be "a mixture or substance" within the terms of the statute. *Id.* at 198. The court, following *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), reasoned that the statute's use of the phrase a mixture or substance of a detectable amount of LSD meant "that something besides the weight of the [controlled substance] would be considered in determining the authorized punishment." *Id.* The reasoning applies with equal force to an individual trafficking in marijuana.

The evidence presented was that the marijuana contained very little, if any, foreign substances outside of the § 195.010(26) defi-

nition. There was substantial evidence on which to base a verdict of guilty of the class A felony.[3] The evidence supported the conviction of the manufacture and production of over thirty kilograms of a mixture or substance containing marijuana. Point denied.

During voir dire the prosecuting attorney made a brief description of the facts of the case and then inquired of the venire, whether anyone was familiar with the case. Venireperson Sandridge stated that the "two Childress names sound familiar to me," and that she may or may not have heard of them through her employment with the F.B.I. No further questions were asked of her and at the close of the examination the panel was excused for the selection of the jury. Defense counsel's motion to strike Ms. Sandridge for cause was sustained. He then moved to quash the venire. That motion was overruled and the court observed that the venireperson's answer was not expanded on by either attorney or Ms. Sandridge. The court determined that the answer had no adverse affect on the jury. No request was made to inquire of the panel concerning what, if any, effect the answer may have had on the members. On appeal, the defendant complains of trial court error in failing to sustain his motion to strike the whole panel or to independently conduct an inquiry of the panel to determine what effect her answer may have had.

We observe that the question which brought about the answer was the first one asked by the prosecutor during general questions and that the defendant had ample opportunity to question the members of the venire during his part of the voir dire. Whether the court should have conducted its own inquiry is not an issue before this court because it was not raised as error before the trial court either at the time of the motion to strike or in his post trial motion. *State v. Blackmon,* 664 S.W.2d 644, 648 (Mo.App. 1984). Our question is whether the court should have sustained the defendant's motion to strike the panel because it was tainted by the answer given.

The trial court has broad discretion in determining whether a jury panel should be dismissed, and its ruling should not be disturbed absent a clear abuse of discretion. *State v. Cotton,* 724 S.W.2d 649, 652 (Mo. App.1986). Movant must demonstrate that the venireperson's response was so inflammatory and prejudicial that it can be said that the right to a fair trial has been infringed. *State v. Harrell,* 637 S.W.2d 752, 757 (Mo.App.1982). Contrary to the defendant's characterization of her response, the fact was that she was uncertain whether she had heard of the Childresses at all, she said only that the names sounded familiar, that she was not positive, and although she worked for the FBI, she was not sure if she had heard it from that source or not. The defendant could have inquired further or requested that the court do so if, at the time, he felt Ms. Sandridge's response needed clarification. The trial court was in a better position to determine prejudice and, under the circumstances, we will not interfere with its discretion. Point denied.

Judgment of conviction affirmed.

All concur.

---

3. On the other hand, there was a basis for acquitting the defendant of the offense charged and convicting him of the lesser included charge. *See State v. Johnson,* 850 S.W.2d 365, 367 (Mo. App.1993). The jury could have returned a verdict of guilty of the manufacture and production of marijuana of an amount less than 30 kilograms. As mentioned, the jury was instructed on the lesser included offense.