STATE of Missouri, Plaintiff–
Respondent,

v.

Joseph M. SMITH, Defendant–Appellant.

Nos. 20183, 20184.

Missouri Court of Appeals,
Southern District,
Division Two.

June 13, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 8, 1996.

Application to Transfer Denied
Aug. 20, 1996.

 

Michael Baker, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Blegen, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

Joseph M. Smith (defendant) was convicted, following trial by the court without a jury, of class A felonies of trafficking drugs in the first degree by distributing LSD, § 195.222.4,[1] and trafficking drugs in the second degree by possessing LSD, § 195.223.4(2) (No. 20183); and two counts of the class A felony of distributing a controlled substance, marijuana, near schools, § 195.214 (No. 20184). The trials were consolidated. The appeals have been consolidated in this court. This court affirms.

 Since defendant waived trial by jury, the trial court's findings have the force and effect of jury verdicts. *State v. Marshell*, 825 S.W.2d 341, 342 (Mo.App.1992). The judgment will be affirmed if there is substantial evidence to support those findings. *Id.* In determining the sufficiency of the evidence, this court accepts as true all evidence in the record that tends to prove the defendant's guilt, together with favorable inferences that can be reasonably drawn therefrom and disregards all contrary evidence and inferences. *State v. Giffin*, 640 S.W.2d 128, 130 (Mo.1982).

1. References to statutes are to RSMo Supp.1992.

*Facts*

Dan Harrington was an informant for the Greene County Sheriff's Department. In November 1991, he knew defendant was living at an address on Elm Street in Springfield, Missouri. The house was located less than 1000 feet—about 422 feet according to Sheriff's Detective Thomas Noyes' testimony—from Campbell Elementary School. Justin Mangan, his wife and child lived at the same address.

On November 16, 1991, Harrington met with Detective Noyes to prepare to go to defendant's residence to purchase marijuana. Harrington had purchased marijuana from defendant on previous occasions. He told Detective Noyes he believed marijuana and LSD could be purchased there.

Detective Noyes searched Harrington and his vehicle to assure he had no controlled substances when he went to defendant's residence. He gave Harrington $100 to use to purchase marijuana and placed a microcassette tape recorder in Harrington's pocket.

Harrington went to defendant's residence. He explained, "I knocked on the door, there was no answer, I stepped inside the door, announced myself, asked if anyone was home. Less than a minute later, [defendant] came down the stairs." Following a conversation, Harrington purchased two quarter-ounce bags of marijuana from defendant for $80. He paid defendant and selected two bags of marijuana from a number of other bags defendant made available to him.

Harrington and defendant also discussed purchasing LSD. Harrington had talked to Justin Mangan earlier that day. Mangan had quoted defendant a price of $350 for a sheet containing "100 hits" of LSD. Defendant told Harrington he would have LSD that Harrington could buy for $200 per sheet. Harrington understood that defendant was the person distributing the LSD; that he had it available at a cheaper price. Defendant told Harrington "to get a hold of him in a week or so" to purchase LSD.

On December 1, 1992, Harrington again went to defendant's residence to purchase marijuana. Detective Noyes searched Har-

rington before he went to defendant's house. He provided $110 for Harrington's use in purchasing the marijuana.

Both defendant and Justin Mangan were at the residence when Harrington arrived. Mangan's wife and infant daughter were also there. Harrington waited in the living room while defendant went into another room. Defendant returned with a plastic bag containing four or five smaller "baggies." Each baggy contained a quarter ounce of marijuana. There was considerable mold on the marijuana. Harrington said he "could probably dry it out, cure it, take out the mold." Mangan told him it would "get you high."

Harrington paid defendant the $110 Detective Noyes had provided and selected four quarter-ounce bags of marijuana from the large bag. He then left defendant's residence and drove to a prearranged location to deliver the marijuana he had purchased to Detective Noyes.

Defendant talked to Harrington during the first part of 1993 about purchasing LSD. He also talked to Justin Mangan. In the latter part of February, Mangan told him defendant had gone to San Francisco; that he would be returning with LSD. During one conversation Mangan said defendant was snowed-in in Denver on his return trip. On February 25 Harrington talked to Mangan. He was told that defendant would be back on a Friday night. Harrington called again February 26 and on February 28 and was told defendant was not back. He contacted Mangan again March 1. Defendant was back.

Later that day Harrington was searched by Detective Noyes to assure he had no controlled substances on his person and provided money to use to purchase LSD. A monitoring device was placed on him that would transmit conversations to a nearby location where Detective Noyes would monitor them. A code was established for Harrington to use to communicate that the sale was complete. Law enforcement officers planned to enter and secure the premises in anticipation of obtaining a search warrant when Harrington gave the signal.

Harrington went to the residence on Elm Street. Mangan met him and negotiated the sale of 250 "hits," two and a half sheets of LSD, for $700. Harrington asked about defendant. He was told defendant was there, asleep in his room. Harrington completed the purchase. He said the code word that notified Detective Noyes the sale was complete.

Sheriff's deputies entered the residence and retrieved the LSD Harrington had purchased. Detective Noyes went through the premises to determine who was present. Justin Mangan and his wife were in a front room. Defendant was in a bedroom in the upstairs level of the residence. The occupants were detained by other deputy sheriffs while Detective Noyes sought a search warrant.

Detective Noyes returned with a search warrant for the residence. It was executed. Fifteen "hits" of LSD were found in a pair of pants in defendant's bedroom. Other LSD was found in the front room of the house. An airline ticket receipt was found with corresponding dates to the February trip Mangan told Harrington defendant had taken. The name on the airline ticket was "Joseph McVay." Defendant's full name is Joseph McVay Smith.

At trial Harrington was permitted to testify about statements Mangan made concerning defendant supplying the LSD Mangan was selling. Tape recordings of telephone conversations between defendant and Mangan were admitted in evidence over defendant's hearsay objections.

At the close of the state's evidence defendant moved for acquittal and moved to strike the evidence of hearsay statements made by Mangan. Defendant contended the state failed to prove by independent evidence a conspiracy with Justin Mangan that would have permitted the statements to be admitted in evidence. The trial court denied the motions.

*No. 20183*

Point I contends the trial court erred in denying defendant's motion for judgment of acquittal with respect to the charges of trafficking drugs in the first degree by distributing LSD and trafficking drugs in the second

degree by possessing LSD. Defendant asserts the trial court erred in admitting and considering hearsay statements of Justin Mangan because the state failed to prove by independent evidence a conspiracy between Mangan and defendant that would have permitted the statements to be admissible by reason of the co-conspirator exception to the hearsay rule. He argues that without the statements there was not sufficient evidence to have convicted defendant of those offenses.

■ The statement of one conspirator is admissible against another by reason of the co-conspirator exception to the hearsay rule. *State v. Pizzella,* 723 S.W.2d 384, 388 (Mo. banc 1987). As defendant asserts, for the exception to apply there must be a showing, independent of the statement, of the existence of a conspiracy. *State v. Fleischer,* 873 S.W.2d 310, 313 (Mo.App.1994). However, evidence of a conspiracy may be either by direct and positive proof or by inference from the particular facts and circumstances in evidence. *Id.* Appellate review of a trial court's ruling that a conspiracy was shown is limited to determining whether there were reasonable grounds for the finding. *Id.*

■ Evidence before the trial court included that defendant and Justin Mangan lived at the same address; that both engaged in selling marijuana and LSD from that location. Dan Harrington purchased marijuana from defendant at the Elm Street residence in the presence of Mangan. On one occasion Mangan gave Harrington the assurance that he could "get high" on the type of marijuana defendant was selling. Defendant told Harrington to contact him later about purchasing LSD. Mangan was the one present at the location where Harrington regularly contacted defendant and provided information about when LSD would be available.

Mangan's information that defendant was travelling to California was corroborated by an airline ticket receipt found at the Elm Street address. The time for which the ticket had been issued corresponded with the time defendant had been away. The name of the person to whom the ticket was issued was "Joseph McVay," the first and middle name of defendant.

The trial court did not err in admitting statements Mangan made on the basis of the co-conspirator exception to the hearsay rule. There was sufficient evidence from which the trial court could find defendant guilty of the offenses charged. No error was committed in denying defendant's motion for acquittal at the close of the state's case. Point I is denied.

■ Point II asserts the trial court erred in finding defendant guilty of trafficking drugs in the first degree because "the [trial] court erroneously included the weight of the blotter paper as part of a mixture or substance containing a detectable amount of LSD."

In order to commit the offense of trafficking drugs in the first degree by distributing, delivering, manufacturing or producing LSD, the amount of LSD involved must be "more than five hundred milligrams of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD)." § 195.222.4. *State v. Hill,* 827 S.W.2d 196, 198 (Mo. banc 1992), held that including the weight of blotter paper impregnated with the solution is proper. *Hill* states, "The statute adequately warned the defendant that something besides the weight of the LSD would be considered in determining the authorized punishment. The legislature's use of 'mixture' and 'substance' indicates its disposition to punish for whatever vector an offender might choose." *Id.*

Defendant acknowledges the holding in *Hill;* however, he attempts to find protection in an assertion that federal sentencing guidelines now exclude the weight of paper for purposes of imposing punishment for federal law violations.

Defendant's attempt to find solace in the federal sentencing guidelines does not entitle him to relief. Federal law controls sentencing procedures in violations of United States criminal statutes. Missouri law controls sentencing procedures in violations of Missouri criminal law. The fact that they may differ in approach is of no consequence. Point II is denied.

*No. 20184*

Defendant's points relied on include no point directed to No. 20184. In the argument part of his brief, after the argument directed to Points I and II, defendant has attempted to state a third "point." It is followed by half a page of "argument."

 Only matters stated under the "Points Relied On" in an appellant's brief will be considered on appeal. *Mansfield v. Smithie,* 615 S.W.2d 649, 651 (Mo.App.1981); *Bryan v. Vaughn,* 579 S.W.2d 177, 182 (Mo. App.1979); *Nutz v. Shepherd,* 490 S.W.2d 366, 372 (Mo.App.1973). This court notes, nevertheless, that the issue defendant attempts to raise with respect to No. 20184 depends on this court finding for defendant on Points I and II. Defendant did not prevail on those points.

*Dispositions of Appeals*

The judgments in No. 20183 and 20184 are affirmed.

SHRUM, C.J., and PREWITT, P.J., concur.