STATE of Missouri, Respondent,

v.

William BORDNER, Appellant.

No. WD 58829.

Missouri Court of Appeals, Western District.

June 26, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 2001.

Application for Transfer Denied Sept. 25, 2001.

Bruce W. Simon, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie Morrell, Asst. Atty. Gen., Jefferson City, for Respondent.

PAUL M. SPINDEN, Chief Judge.

William Bordner appeals the circuit court's judgment in which he was convicted of first-degree trafficking of drugs, unlawful use of drug paraphernalia, and endangering a child's welfare in the first degree. He complains that the circuit court erred in admitting evidence uncovered in a search of his house because it was "the product of an unlawful search and seizure predicated on an invalid warrant improperly issued." He argues that the search warrant was based in part on evidence that police obtained unlawfully from trash bags, which they found on the curb in front of his Lee's Summit house. He also attacks the judgment on the ground that the state did not establish that he manufactured a substance weighing more than 90 grams that contained a *usable* amount of methamphetamine. We affirm.

In obtaining a warrant to search Bordner's house, Mark Wiesemann, a police detective, submitted an affidavit, which said:

On 09–24–98, the Lee's Summit Police Department received information that a William C. Bordner was cooking methamphetamine at 1500 SW Highland Drive, Lee's Summit, Jackson County, Missouri. The reporting person also

stated that Bordner had an unknown type pistol in his possession at this time.

On 11–11–98, the Lee's Summit Police Department received another report that William C. Bordner is using methamphetamine and was manufacturing methamphetamine at his residence at 1500 SW Highland Drive, Lee's Summit, Missouri. The reporting person stated Bordner had recently done a methamphetamine cook which had blown up and burned Bordner. The reporting person also stated that Bordner was in possession of a Mak–11, an AK–47 and several silencers. These are assault type weapons. The reporting party also advised that Bordner was tending to an outdoor marijuana crop operation at the edge of his property.

On 05–24–99, Detective Mark Phillips of the Lee's Summit Police Department conducted a trash pull at 1500 SW Highland Drive, Lee's Summit, Jackson County, Missouri. There were several trash bags sitting at the curb in front of the residence, as if it was ready to be picked up. The trash bags were recovered and taken to the Lee's Summit Police Department for inventory. An inventory of the bags revealed several empty cans of acetone, several empty cans of charcoal fluid, several empty cans of "Heet," several empty bottles of psuedoephedrine pills, coffee filters with red phosphorous, empty cans of Red Devil Lye, numerous used syringes, glass Mason jars with white residue, empty packages of dry ice, disposable gloves, rubber tubing, duct tape, glass pipes with residue, and a large amount of a white binder substance.

A computer check of William C. Bordner responded with a William C. Bordner, W/M, 08–30–60, at the address of 1500 SW Highland Drive, Lee's Summit, Missouri. A criminal history check of Bordner revealed an arrest on 03–19–80 for Assault 1st degree. The computer showed that he was convicted of Assault 1st degree on 06–12–80. It also showed an arrest on 03–03–86 for Assault 3rd Degree. This charge was later dismissed. The reporting person also stated that in the past he has heard Bordner state he (Bordner) was not scared of the Police. Bordner also stated that if the Police came in his residence they would not be leaving. The reporting party took this to mean that Bordner would try to harm the Police in some way if they came into his residence.

The circuit court issued a search warrant on the basis of this affidavit.

At the suppression hearing, Wiesemann testified that the trash bags were sitting on the curb in front of Bordner's house on the day designated for trash pick up in the neighborhood. He said that officers paid trash haulers $20 to empty their truck's hopper, pick up only the bags in front of Bordner's house, and transport them three blocks to where Wiesemann sat in his pickup. Mark Phillips, another police detective, watched the haulers pick up the bags and followed the trash truck to Wiesemann's pickup where persons whom Wiesemann identified only as "we" put the bags in his truck. Wiesemann took the bags to Lee's Summit police headquarters where, he said, officers sifted through their contents. Wiesemann admitted that neither he nor Phillips saw who put the bags in front of Bordner's house. The prosecutor did not ask Wiesemann whether any items found in the bags had Bordner's name or his house's address on them.

Bordner concedes that search of the trash bags did not, "in and of itself offend the Fourth Amendment."[1] He argues,

1. Mo. CONST. art. I, § 15 (1945), provides the same guarantees against unreasonable search

however, that nothing found by police in the bags was inconsistent with lawful behavior and could not, therefore, "form the basis by which a judicial officer [could] conclude that criminal conduct [was] afoot" and that, even if the items had been incriminating, nothing "tied" the bags to Bordner. The only "nexus" between the bags and him, he argues, is that police found them in front of his house and that this was not enough to support the circuit court's finding of probable cause.

■■■■ In reviewing this issue, we must give the circuit court "great deference" to its "initial judicial determination of probable cause . . ., and we reverse only if that determination is clearly erroneous." *State v. Middleton*, 995 S.W.2d 443, 457 (Mo. banc), *cert. denied*, 528 U.S. 1054, 120 S.Ct. 598, 145 L.Ed.2d 497 (1999). The circuit court's obligation was to make a " 'practical, commonsense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found.' . . . That decision is made from all the circumstances set out in the affidavit, including the 'basis of knowledge' and 'veracity' of persons providing hearsay information." *State v. Berry*, 801 S.W.2d 64, 66 (Mo. banc 1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The circuit court was free to make reasonable inferences from the evidence presented. *United States v. Feliz*, 182 F.3d 82, 88 (1st Cir.1999), *cert. denied*, 528 U.S. 1119, 120 S.Ct. 942, 145 L.Ed.2d 819 (2000); *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir.1993); *United States v. Anderson*, 851 F.2d 727, 728–29 (4th Cir.1988), *cert. denied*, 488 U.S. 1031, 109 S.Ct. 841, 102 L.Ed.2d 973 (1989); *United States v. Freeman*, 685

F.2d 942, 949 (5th Cir.1982); *Iverson v. State of North Dakota*, 480 F.2d 414, 417–18 (8th Cir.), *cert. denied*, 414 U.S. 1044, 94 S.Ct. 549, 38 L.Ed.2d 335 (1973); *United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir.1970).

We discern no basis for concluding that the circuit court erred in issuing the warrant to search Bordner's house. Given the totality of these circumstances, the circuit court had a sufficient basis for finding probable cause for the search. The trash bags' contents included containers for common products for making methamphetamine and corroborated reports to police that Bordner had been making methamphetamine in his house. The trash bags "updated" the aged reports. Although the officers did not see who put the trash bags in front of Bordner's house, the bags' being in front of the house on the day designated for trash pick up and the previous reports that Bordner had been making methamphetamine gave the circuit court a reasonable basis for inferring that the bags' contents had originated inside Bordner's house.

■■■■ Bordner relies heavily on *People of the State of Illinois v. Burmeister*, 313 Ill.App.3d 152, 245 Ill.Dec. 903, 728 N.E.2d 1260 (2000). In that case, the Illinois court ruled, in circumstances similar to this case, that officers did not establish probable cause for a search warrant. We simply disagree with the reasoning in *Burmeister*. As the Supreme Court stated in *Gates*, "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians,

---

and seizures as the Fourth Amendment to the United States Constitution. "Thus, any analysis of search and seizure questions under the Fourth Amendment is identical to search and seizure questions arising under Missouri law." State v. Damask, 936 S.W.2d 565, 570 (Mo. banc 1996).

act." 462 U.S. at 231, 103 S.Ct. 2317. "It is not required that the affidavit provide proof beyond a reasonable doubt or by a preponderance of the evidence, the rule being that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *State v. Hill*, 854 S.W.2d 814, 819 (Mo.App.1993) (quoting *Gates*, 462 U.S. at 235, 103 S.Ct. 2317). By not factoring in the anonymous tips to its holding, the *Burmeister* court seemingly required a *prima facie* showing of criminal activity and not just a reasonable probability of criminal activity. We decline to follow such a stringent standard in this case.

▆ Bordner directs his second point to the circuit court's judgment that he had violated § 195.222.8(2), RSMo Supp.1998. That statute says:

A person commits the crime of trafficking drugs in the first degree if ... he distributes, delivers, manufactures, produces or attempts to distribute, deliver, manufacture or produce more than thirty grams of any material, compound, mixture or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system: ... methamphetamine, its salts, optical isomers and salts of its optical isomers[.] Violations of this subsection or attempts to violate this subsection shall be punished as follows:

. . .

(2) If the quantity involved is ninety grams or more, ... the person shall be sentenced to the authorized term of imprisonment for a class A felony which term shall be served without probation or parole.

Bordner complains that the state's evidence "totally failed to reflect a quantitative amount of methamphetamine sufficient to sustain the state's burden of proof." He acknowledges that seven samples of substances taken from his house contained methamphetamine and, weighed together, weighed more than 2000 grams, but he complains that the state did not establish whether the substances contained any more than trace amounts of methamphetamine as opposed to usable amounts.

The Supreme Court rejected a similar argument concerning § 199.222 in *State v. Hill*, 827 S.W.2d 196 (Mo. banc 1992). In that case, the Supreme Court said, "The statute adequately warned the defendant that something besides the weight of the [contraband] would be considered in determining the authorized punishment. The legislature's use of 'mixture' and 'substance' indicates its disposition to punish for whatever vector an offender might choose." *Id.* at 198. Similar rulings were made in *State v. Riley*, 901 S.W.2d 92 (Mo.App.1995), and in *State v. Childress*, 882 S.W.2d 691 (Mo.App.1994). Section 195.222.8(2) authorizes punishment for the making of "any material, compound, mixture, or preparation" which contains any quantity of methamphetamine and weighs more than 90 grams. His point is without merit.

We affirm the circuit court's judgment.

PATRICIA BRECKENRIDGE, Judge, and THOMAS H. NEWTON, Judge, concur.